**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re:<br><br>INTERVAL OWNERS' ASSOCIATION: THE BAY VOYAGE, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 26-bk-11002 |

**DECLARATION OF BRENNAN HANDFIELD IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND APPLICATIONS FOR FIRST DAY RELIEF**

I, Brennan Handfield, of full age, hereby certify and declare pursuant to Title 28 of the United States Code, Section 1746, as follows:

1. I am the President of the Board of Directors of the Interval Owners' Association: The Bay Voyage, Inc. ("Debtor" or "Association").

2. I make this Declaration based on my personal knowledge, a review of records of the Association, a review of documents publicly filed, and/or information available through counsel, agents and/or representatives of the Association.

3. I submit this Declaration to assist the Court and parties in interest in understanding the events and circumstances leading to the commencement of this case, and in support of the motions and other "first day" pleadings filed by Debtor (collectively, the "First Day Motions"), set forth in more detail in this Declaration. I am authorized to submit this Declaration on behalf of Debtor.

4. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

[1] The last four digits of Debtor's tax identification number are 5666.

5. On November 6, 2026 (the "Petition Date"), the Association filed a voluntary petition for relief pursuant to title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, Debtor has remained in possession of its assets and has continued management of its property, business, and affairs.

**A. History of the Association and Governing Documents.**

6. The Association is a non-profit corporation organized under the laws of the State of Rhode Island pursuant to Articles of Incorporation filed with the Office of the Secretary of State of the State of Rhode Island on April 23, 2019 as filing number 201990928390 (the "Articles of Incorporation"). Pursuant to the Articles of Incorporation, the purposes of the Association are "*[t]o own the common areas and operate the timeshare resort known as The Bay Voyage Inn, 150 Conanicus, Jamestown, RI and any other purpose lawful under RI general laws.*" Prior to incorporating, the Association operated as an unincorporated association of interval owners governed by a board of directors.

7. The By-laws of the Association were recorded on December 31, 1986, in Book 102 at Page 215 in the Land Evidence Records of the Town of Jamestown, Rhode Island (the "Land Records Office"). The By-laws were amended by that certain First Amendment to the By-laws of The Interval Owners' Association: The Bay Voyage, recorded on June 23, 1988 in Book 130 at Page 261 in the Land Records Office. The By-laws, as amended are referred to as the "By-laws". The By-laws provide that the Association was *"formed to generally promote the welfare of its members; to provide a forum for the exchange of ideas relative to policies; to promote and operate in accordance with the plan of Interval Ownership [defined below] as set forth in the Declaration of Covenants and Restriction of Interval Ownership (the 'Declaration') [defined below]; and to do all acts and things necessary or appropriate to the ordinary and necessary operation and maintenance of the Plan."*

8. Pursuant to the By-Laws, the Association is governed by a Board of Directors (the "Board"). The current members of the Board are Brennan Handfield, President; Diane Chapman, Vice President; Jennifer Aviles, Secretary/Treasurer; Donna Mcardle, Director; and James Laidlaw, Director.

**B. Property Structure.**

9. The condominium known as The Bay Voyage Condominium (the "Condominium"), was formed pursuant to a Declaration dated December 30, 1986 and recorded on December 31, 1986 in Volume 102, at Page 108 et seq. in the Land Records Office (the "Condominium Declaration"). See Condominium Declaration, introductory paragraph, recitals and submission clause. The Condominium Declaration established The Bay Voyage Condominium in Jamestown, Rhode Island as a condominium regime under the Rhode Island Condominium Act. See Condominium Declaration, recitals and submission clause; art. I, §1.1. The Condominium Declaration was executed by the Bay Voyage Company, a Connecticut joint venture, on December 30, 1986. See Condominium Declaration, introductory paragraph. The Condominium Declaration created a mixed-use condominium consisting of commercial and hotel suites, and their appurtenant interests in common elements. The Condominium Declaration provides for governance of the Condominium through the Bay Voyage Condominium Association (the "Condo Association"). See Condominium Declaration, art. I, §§ 1.10, 1.16, 1.22–1.24, and Ex. B, pts. A.1–2, C (unit descriptions); and Ex. C (common-element interests); and art. VI, §§ 6.1–6.2 (association governance).

10. The property subject to the Condominium Declaration is commonly known as *The Bay Voyage Inn,* located at 150 Conanicus, Jamestown, RI (the "Property"). The Property consists

of three (3) commercial units[2] and thirty-two (32) residential hotel suites, together with their appurtenant interests in the common elements.

11. The Condo Association serves as the "Master" or dominant association of the Condominium for the commercial units and hotel suites, and membership in the Condo Association consists of all unit owners. The Condo Association adopts budgets, collects assessments, and administers the Property. See Condominium Declaration, art. I, § 1.8; art. VI, §§ 6.1–6.2.

12. The Condominium Declaration provides that the Declarant may submit any or all of the hotel suites to an interval form of ownership by recording a separate Declaration of Covenants and Restrictions of Interval Ownership and further provides that such interval owners' rights are governed and limited by separate interval ownership documents. The Condominium Declaration contemplates the creation of an interval owners association as a sub-association of the Condo Association. Membership in an interval owners association consists exclusively of interval owners. See Condominium Declaration, art. I, §§ 1.19, 1.28–1.29, 1.39; art. VI, §§ 6.2–6.3; Ex. B, pt. A.1.

13. An interval ownership plan was established by a *Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage* dated December 30, 1986, and recorded on December 31, 1986 in Volume 102, at Page 167 et seq. in the Land Records Office, as amended[3] (collectively the "Interval Declaration").

---

[2] The commercial units consist of a restaurant, a meeting/function area and a health spa/fitness facility.

[3] The *Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage* was amended by that certain First Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on February 20, 1987 in Book 104 at Page 0327 in the Land Records Office; that certain Second Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on May 15, 1987 in Book 106 at Page 0079 in the Land Records Office; that certain Third Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on June 16, 1987 in Book 112 at Page 0267 in the Land Records Office; that certain Fourth Supplemental

---

Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on July 28,1987 in Book 115 at Page 0073 in the Land Records Office; that certain Fifth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on October 4, 1988 in Book 135 at Page 0160 in the Land Records Office; that certain Sixth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on October 24, 1988 in Book 136 at Page 0143 in the Land Records Office; that certain Seventh Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on April 12, 1990 in Book 158 at Page 078 in the Land Records Office; that certain Eighth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on August 9, 1991 in Book 175 at Page 222 in the Land Records Office; that certain Confirmatory Fifth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on September 26, 1991 in Book 177 at Page 055 in the Land Records Office; that certain Ninth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on September 26, 1991 in Book 177 at Page 058 in the Land Records Office; that certain Tenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on September 26, 1991 in Book 177 at Page 061 in the Land Records Office; that certain Eleventh Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on February 5, 1992 in Book 182 at Page 153 in the Land Records Office; that certain Twelfth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on February 3, 1993 in Book 203 at Page 133 in the Land Records Office; that certain Thirteenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on March 9, 1993 in Book 205 at Page 159 in the Land Records Office; that certain Fourteenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on December 1, 1993 in Book 223 at Page 102 in the Land Records Office and that certain Fifteenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on February 23, 1994 in Book 228 at Page 182 in the Land Records Office; that certain Sixteenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on March 9, 1994 in Book 229 at Page 110 in the Land Records Office and that certain Seventeenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on April 28, 1994 in Book 231 at Page 314 in the Land Records Office; that certain Eighteenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on July 5, 1994 in Book 235 at Page 196 in the Land Records Office; that certain Nineteenth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on August 26, 1994 in Book 237 at Page 313 in the Land Records Office; that certain Twentieth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on September 23, 1994 in Book 239 at Page 120 in the Land Records Office; that certain Twenty-First Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on November 3, 1994 in Book 241 at Page 220 in the Land Records Office; that certain Twenty-Second Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on December 9, 1994 in Book 243 at Page 016 in the Land Records Office; that certain Twenty-Third Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on December 9, 1994 in Book 243 at Page 018 in the Land Records Office; that certain Twenty-Fourth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on July 17, 1995 in Book 253 at Page 180 in the Land Records Office; that certain Twenty-Fifth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on October 18, 1995 in Book 259 at Page 028 in the Land Records Office; that certain Twenty-Sixth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on July 16, 1996 in Book 273 at Page 196 in the Land Records Office; that certain Twenty-Seventh Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on July 30, 1997 in Book 292 at Page 112 in the Land Records Office; that certain Twenty-Eighth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on December

14. The thirty-two (32) hotel suites and their concomitant common elements were converted to a form of interval ownership pursuant to the Interval Declaration and are operated as a timeshare community. See Interval Declaration, art. I(bb)–(cc); art. III; art. XXVIII.[4] The Debtor is responsible for the managing and regulating the use of the Interval Ownership Suites (defined below) and the operation of the Interval Ownership Plan. See Interval Declaration, art. IV (opening par.).

15. Pursuant to Section (q) of Article I of the Interval Declaration, "'Condominium Unit' means a Unit of The Bay Voyage as set forth in the Condominium Declaration."

16. Pursuant to Section 1.41 of Article I of the Condominium Declaration, "'Unit' means an enclosed space consisting of one or more rooms occupying all or part of one or more floors in a building provided, always, that any such Unit has direct exit to a hallway or a thoroughfare or to a Common Element leading to a hallway or a thoroughfare."

17. Pursuant to Section (cc) of Article I of the Interval Declaration, "'Interval Ownership Suite(s)' or 'IOS' means those Condominium Units located in The Bay Voyage designed for overnight accommodations which comprise that portion of The Bay Voyage submitted to the Interval Ownership Plan by this Declaration and any Supplemental Declaration as may be recorded from time to time." An IOS may also be referred to herein simply as an "Interval."

---

24, 1997 in Book 299 at Page 237 in the Land Records Office; and that certain Twenty-Ninth Supplemental Declaration of Covenants and Restrictions of Interval Ownership - The Bay Voyage recorded on September 18, 1998 in Book 316 at Page 194 in the Land Records Office.

4 The hotel suites were submitted to the Interval Ownership Plan by the original Interval Declaration, which submitted eight units, and by the recorded supplemental declarations described in footnote 3 above.

18. Pursuant to Article I (aa) of the Interval Declaration, "'Interval Owner' means the owner or owners of an Interval Interest and the Declarant with respect to any Interval Interest not conveyed."

19. Pursuant to Article I (dd) of the Interval Declaration, "'Interval Week' means one of fifty-two (52) periods of occupancy in an Interval Ownership Suite which shall consist of not less than seven (7) days."

20. Pursuant to Section (bb) of Article I of the Interval Declaration, "'Interval Ownership' or 'Interval Ownership Plan' means the concept whereby the purchaser will acquire an undivided percentage interest in an Interval Ownership Suite in fee simple as a tenant-in-common with other Interval Owners. In addition, Interval Owners will receive the exclusive right to occupy and use a designated Interval Ownership Suite (chosen by the Interval Owner at the time of the execution of his purchase and sale agreement) for the same Interval Week each year ('Fixed Interval Week') and/or the exclusive right to occupy and use a non-designated Suite on a variable basis during one or more Interval Weeks in accordance with a reservation procedure adopted pursuant to the provisions hereof ('Flexible or Restricted Flexible Interval Week') and/or the exclusive right to occupy and use a designated Interval Ownership Suite for thirteen (13) Interval Weeks each year in accordance with the Quarter Interest Calendar ('Quarter Interest')."

21. Pursuant to Section (i) of Article I of the Interval Declaration, "'Commercial Unit(s)' means Condominium Units C-1, C-2, C-3 in The Bay Voyage which are designed for commercial and/or retail purposes including restaurant and bar use rather than residential overnight accommodations and which are not submitted to the Plan."

22. Pursuant to Article I(jj) of the Interval Declaration, a "Member" means any person or entity that is an Interval Owner and is therefore a member of the Association (individually, an "Association Member" and collectively, the "Association Members").

23. Article V of the By-laws provides that each good standing Association Member shall be entitled to one (1) vote for each Interval Week owned by said member. Where an Interval Week is owned jointly by two or more persons, there shall be only one vote for each such Interval Week.

**C. Property Description.**

24. The following photographs depict certain aspects of the Property:








**D. Ownership Interests of the Property.**

25. Pursuant to a Quitclaim Deed dated and recorded on October 22, 2025 in the Land Records Office as Document No. 158580 in Book 3278, at Page 126, Eastern Resorts Company, LLC conveyed to the Interval Owners' Association: The Bay Voyage, a Rhode Island unincorporated association and predecessor to the Association the Commercial Units, Unit C-2 and Unit C-3. Eastern Resorts Company, LLC filed an additional Quitclaim Deed dated November 4, 2026 and recorded on November 6, 2026 as Document No. 20260000068990 in the office of the Town Clerk, Jamestown, Rhode Island, in Book 1088, at Pages 173-174.

26. The Commercial Units owned by the Association consist of a meeting/function area and a health spa/fitness facility, together with a concomitant share of the common elements in the Property. The Association owns Unit C-2 and Unit C-3 as a tenant-in-common with the owner of Unit C-1 and all Interval Owners at the Property.

27. According to the records of the Association, Unit C-1 is owned by 150 Conanicus Ave LLC. Upon information and belief, 150 Conanicus Ave LLC leases Unit C-1 to JB on the Water LLC, which operates Unit C-1 as a restaurant.

28. Pursuant to an Interval Warranty Deed dated June 22, 2015 and recorded on June 29, 2015 in the Land Records Office as Document No. 00048907 in Book 847, at Page 219, Doris W. Dombrowski conveyed to the Interval Owners' Association: The Bay Voyage, a Rhode Island unincorporated association and predecessor to the Association one (1) Interval Week in Unit 301D.

29. Pursuant to a Quitclaim Deed dated November 4, 2026 and recorded on November 6, 2026 as Document No. 20260000068991 in the office of the Town Clerk, Jamestown, Rhode Island in Book 1088, at Pages 175-177, Eastern Resorts Company, LLC conveyed to the Association the following intervals:

| Unit | Week | Product Type | Interval Weeks |
|---|---|---|---|
| 108C | 39 | Flex | 17-24, 36-43, and 52 |
| 109B | 2 | Flex | 1-16 and 44-51 |
| 110C | 35 | Flex | 25-35 |
| 112C | 27 | Flex | 25-35 |
| 201A | 17 | Flex | 17-24, 36-43, and 52 |
| 202D | 40 | Flex | 17-24, 36-43, and 52 |
| 204C | 7 | Flex | 1-16 and 44-51 |
| 205A | 5 | Flex | 1-16 and 44-51 |
| 206A | 41 | Flex | 17-24, 36-43, and 52 |
| 210A | 17 | Flex | 17-24, 36-43, and 52 |
| 302B | 10 | Flex | 1-16 and 44-51 |
| 303C | 43 | Flex | 17-24, 36-43, and 52 |
| 308D | 28 | Flex | 25-35 |
| 312C | 3 | Flex | 1-16 and 44-51 |

| Unit | Week | Product Type | Interval Weeks |
|---|---|---|---|
| 105 | 37 | Flex | 17-24, 36-43, and 52 |
| 106 | 11 | Flex | 1-16 and 44-51 |
| 208 | 6 | Flex | 1-16 and 44-51 |
| 209 | 3 | Flex | 1-16 and 44-51 |
| 304 | 9 | Flex | 1-16 and 44-51 |
| 306 | 6 | Flex | 1-16 and 44-51 |
| 310 | 8 | Flex | 1-16 and 44-51 |
| 311 | 13 | Flex | 1-16 and 44-51 |

30. Thus, in addition to its ownership of Unit C-2 and Unit C-3, the Association owns 23 Interval Weeks at the Property together with a concomitant share of the common elements (the "Association Interval Interest"). The Association Interval Interest comprises approximately 1.38% of the total Interval Weeks at the Property. The Association owns the Association Interval Interest as a tenant-in-common with all Interval Owners at the Property.

31. According to the records of the Association, as of November 5, 2026, First American Trust, FSB, as Trustee, Duly Appointed Under the Declaration of Trust for the Club

Wyndham Access Vacation Ownership Plan ("First American Trust, as Trustee") owns 626 Interval Weeks at the Property, and a concomitant share of the common elements at the Property. According to the records of the Association, First American Trust, as Trustee, owns approximately 37.62% of the total Interval Weeks at the Property. First American Trust, as Trustee, is a tenant in common with all other Interval Owners at the Property as well as the Debtor.

32. According to the records of the Association, as of November 5, 2026, WorldMark, the Club (the "Club") owns 514 Interval Weeks at the Property, and a concomitant share of the common elements at the Property. According to the records of the Association, the Club owns approximately 30.89% of the total Interval Weeks at the Property. The Club is a tenant in common with all other Interval Owners at the Property as well as the Debtor.

33. According to the records of the Association, as of November 5, 2026, Eastern Resorts Company, LLC ("Eastern Resorts") owns 94 Interval Weeks at the Property, and a concomitant share of the common elements at the Property. According to the records of the Association, Eastern Resorts owns approximately 5.65% of the total Interval Weeks at the Property. Eastern Resorts is a tenant in common with all other Interval Owners at the Property as well as the Debtor.

34. According to the records of the Association, as of November 5, 2026, the remaining 407 Interval Weeks, and a concomitant share of the common elements, are owned by other Interval Owners who are parties to approximately 407 contracts related to such Interval Weeks.[5] According

[5] Units 109, 111, 203, 209, 211, and 301 each contain quarter share interests owned by individuals. Unit 109 contains a quarter share interest owned by Raymond Lucia and Matha Lucia. Unit 111 contains two quarter share interests owned by Dharmesh Patel. Unit 203 contains a quarter share interest owned by Youseff Horanieh. Unit 209 contains a quarter share interest owned by Nathan Garner and Indira Garner. Unit 211 contains a quarter share interest owned by Kim Thorne O'Brien. Unit 301 contains a quarter share interest owned by Wade Signor and Debra Signor.

to the records of the Association, these Interval Owners own approximately 24.46% of the total Interval Weeks at the Property as tenants in common with all other Interval Owners and the Debtor.

35. Upon information and belief, Club Wyndham Access Vacation Ownership Plan[6] has or may offer to acquire certain Interval Weeks in the Property, in exchange for certain consideration. Debtor is not and will not be a party to any such transaction.

**E. The Reserve Study.**

36. Pursuant to the 2025 reserve study received by the Board (the "Reserve Study"), the Property needs repairs, capital improvements and renovations estimated to cost more than $4.2 million from 2025 through 2030. A copy of the Reserve Study is attached at **Exhibit "A"** hereto. Pursuant to the Reserve Study (i) the budgeted annual reserve contribution for the 2025 fiscal year is $774,025 or $506/unit week based on 1,530 unit weeks (30 units x 51 weeks), (ii) the budgeted 2025 reserve funding amount does not adequately fund future projected reserve, and (iii) to adequately meet future projected reserve expenditures, it will be necessary to increase the budgeted funding amount by 15% in 2026, with increases of 3% annually thereafter.

**F. Maintenance Fee Delinquencies and Foreclosure Status.**

37. As of June 18, 2026, (i) 85 Interval Owners were delinquent in the payment of maintenance fees, and (ii) the amount past due to the Association totaled $1,980,895.00. The

[6] Upon information and belief, pursuant to the Declaration of Covenants, Conditions and Restrictions; Grant and Reservation of Easements for Club Wyndham Access Vacation Ownership Plan ("CWA"), dated January 3, 2008, as amended, supplemented or restated from time to time (the "Club Declaration"), PTVO Owners Association, Inc. ("PTVO"), a non-stock, non-profit corporation duly organized and existing under the laws of the State of Delaware, and Wyndham Vacation Resorts, Inc. ("WVR") created a multi-site timeshare program known as Club Wyndham Access. Upon Information and belief, pursuant to a Declaration of Trust for CWA dated as of January 4, 2008, as amended, (the "Trust Declaration") PTVO and WVR created an irrevocable trust to hold legal title to certain real property interests in one or more resort properties ("Club Properties") that have been subjected to the Club Declaration. Upon information and belief, the Club Properties are deeded to First American Trust, a Federal Savings Bank ("First American Trust"). Upon information and belief, First American Trust, as Trustee is the trustee under the Trust. Declaration. Upon information and belief, PTVO is the beneficiary under the Trust Declaration.

Association has ordinarily utilized outside debt collection service providers to pursue collection of delinquent maintenance fees and will continue to do so in instances beneficial to the bankruptcy estate, in the Board's business judgement.

38. WVR and the Association are parties to an Inventory Foreclosure Agreement dated December 3, 2010, which was amended by a First Amendment to Inventory Foreclosure Agreement effective February 3, 2015 (collectively the "IFA"). Pursuant to the IFA, the Association engaged WVR to assist in foreclosure proceedings against "Delinquent Owners" (as defined in the IFA). The IFA provides for the assignment by the Association and purchase by WVR of "Delinquent Inventory" (as defined in the IFA) for the purpose of instituting foreclosure proceedings, deed in lieu of foreclosures and similar take-back proceedings. WVR paid for the costs of such foreclosures, deeds in lieu of foreclosures and similar take-back proceedings and in exchange for same title to the Delinquent Inventory is conveyed to WVR.

39. As of June 9, 2026, the Association tendered to WVR accounts of approximately 56 Delinquent Owners for the purpose of instituting foreclosure proceedings, deed in lieu of foreclosures and similar take-back proceedings. WVR has not filed foreclosure actions as to these accounts. In light of the bankruptcy filing, the Association intends to defer new foreclosure actions, without prejudice to the right of the Association to continue or commence collection and/or foreclosure action against Delinquent Owners and without waiver of any rights or remedies of the Association.

**G. Management of the Property.**

40. The Condo Association's Board is authorized to retain a professional management company for the Condominium. See Condominium Declaration, art. XIX and Condo Association By-laws, art. III, §§ 3.2(D), 3.2(L), pp. 5–6, 8.

41. The Association, through its Board, is responsible for the operation, management and maintenance of the property submitted to the Interval Ownership Plan. Section 2 of Article XIII of the By-Laws specifically give the Board the right to manage such property submitted to the Interval Ownership Plan, including hiring a management company.

42. The Association and the Condo Association jointly retained a professional management company for the Property. The Condo Association and the Association entered into a Management Agreement with Eastern Resorts Company ("Former Manager") on October 13, 1998 (the "Original Management Agreement"). The Original Management Agreement was amended by that Amended & Restated Management Agreement between Fairfield Resorts, Inc (successor to Eastern Resorts, Company) and the Association (but not the Condo Association) dated January 1, 2006 (the "Amended Management Agreement", and together with the Original Management Agreement, the "Management Agreement"). Wyndham Vacation Management, Inc.[7] ("Property Manager") is the successor in interest to all of Former Manager's rights, obligations and interest under the Management Agreement. The Management Agreement remains in effect.

43. By the Management Agreement, the Association and the Condo Association appointed the Property Manager to provide certain services (collectively, the "Services") as manager of the Property for a term of five years, which automatically renews for successive five-year periods unless terminated upon ninety (90) days written notice by either party of its intent not to renew upon the conclusion of the then-current period.

44. The Services provided by the Property Manager are set forth in Paragraph 3.1 of the Original Management Agreement and Paragraph 6 of the Amended Management Agreement

[7] Upon information and belief, the Property Manager is an affiliate of WVR, Eastern Resorts. Upon information and belief, the Property Manager, WVR and Eastern Resorts are indirect subsidiaries of Travel + Leisure Co.

and include (i) maintaining the Association's books and records, (ii) conducting business correspondence on behalf of the Association, (iii) maintaining a master list of owners of interests in the Association, (iv) maintaining the Property and repairing individual units as needed, (v) contracting with vendors and service providers, (vi) entering into any concession, lease, equipment lease, contract, or agreement for the operation of the Property and the use of machinery and equipment of the Association, (vii) purchasing such additional machinery and equipment as reasonably necessary for the maintenance and upkeep of the common elements, (viii) purchasing or contracting for services, maintenance, and materials as it deems advisable, (ix) providing housekeeping services to the Association, (x) hiring and compensating employees working on behalf of the Association, (xii) hiring experts including attorneys, tax consultants, accountants, and such other professionals and experts on behalf of the Association, (xiii) supervising and performing various financial and accounting services, including management of funds, maintaining bank accounts, coordinating all accounts payable, preparing financial statements and records, processing payroll obligations, reconciling bank statements, developing an annual budget, coordinating the preparation and filing of necessary tax returns, annual audits, and assessment billing and collections, (ix) obtaining and maintaining all necessary insurance coverage, (x) providing reservation, inventory management, and owner services, (xi) providing client services, (xii) providing check-in and check-out services, (xiii) providing IT services, (xiv) enforcing rules and regulations as directed by the applicable board, and (xv) attending board meetings and member meetings.

45. The Property Manager passes through to the Association the costs of these Services on a dollar-for-dollar basis, without any markup. The Property Manager's only compensation is a flat rate of 10% of various expenditures referred to as the "Management Fee".

46. During 2024, the total amount paid under the Management Agreement for services was $161,964.22, or approximately $13,497.02 per month. For calendar year 2025, the total amount paid under the Management Agreement for services was $176,688.24, or approximately $14,724.02 per month. For 2026, year-to-date through the month of November, the total amount paid under the Management Agreement for services was $38,982.57 (or approximately $3,543.87 per month), and the Association also reimbursed the management company for additional expenses under the Management Agreement in the total amount of approximately $238,459.51 (or approximately $21,678.14per month).

47. The Management Agreement is necessary for Debtor to continue operating and maintaining the Property, as Debtor does not employ or compensate any employees directly. Therefore, the Debtor would be unable to continue operations without the benefit of the Management Agreement. As such, Debtor anticipates continuing to operate under the terms of the Management Agreements and satisfying the obligations arising thereunder in the ordinary course of its business.

**H. Pre-Petition Resolutions.**

48. On October 13, 2025, special meetings of the members of both the Condo Association and the Association were held (the "October 2025 Special Meetings").

(a) The October 2025 Special Meeting of Members of the Condo Association.

49. At the Special Meeting of the Condo Association members (the "October 2025 Condo Association Special Meeting"), the requisite number of Condo Association members voted to authorize the Condo Association board to file a chapter 11 bankruptcy petition for the Condo Association to, among other things and subject to Bankruptcy Court approval; (i) market and sell the Property, free and clear of the interests of all, market and sell the resort property, (ii) retain bankruptcy counsel and real estate professionals, (iii) suspend certain resort operations and

maintenance fee collection during 2026, (iv) acquire additional ownership interests before filing, and (v) take actions necessary to implement the restructuring and sale process. All measures presented at the October 2025 Condo Association Special Meeting were approved unanimously by the votes cast, with 95% of the voting interests represented and 95% voting in favor of every resolution presented.

(b) The October 2025 Special Meeting of Members of the Debtor Association.

50. At the Special Meeting of the Association Members (pursuant to the By-laws) (the "October 2025 IOA Special Meeting"), the requisite number of Association Members voted to authorize the Board to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to Bankruptcy Court approval, market and sell the Property free and clear of the interests of all interval owners (including non-debtor owners), with such interests to attach to the proceeds of sale, subject to distribution pursuant to Bankruptcy Court order.

51. With 1,664 voting interests available and 1,363 or 81.911% of the voting interests represented in person or by Proxy, the Board certified a quorum of at least 25% at the October 2025 IOA Special Meeting. At that October 2025 IOA Special Meeting, Association Members specifically voted to authorize the Board to:

(i) file a chapter 11 bankruptcy case on behalf of the Association – **with 99.626% of the voting interests present at the meeting (in person or by proxy) in favor and .374% of the voting interests not in favor**;

(ii) engage professionals as the Board deems appropriate to facilitate the bankruptcy proceeding including, but not limited to, legal, accounting, and brokerage professionals – **with 99.70410% of the voting interests present at the meeting (in person or by proxy) approving and .2959% of the voting interests disapproving**;

(iii) suspend operations at The Bay Voyage Inn for 2026 including (a) suspend occupancy at the resort by members, guests and others as of December 27, 2025 (or shortly thereafter as deemed necessary or proper by the Authorized Persons) without waiver of the right of the Association to re-commence occupancy upon notice to members; (b) suspend collection of 2026 maintenance fees from Association Members, without waiver of the right of the Association to later seek payment of such fees and without waiver of member obligations regarding same, upon notice to members; (c) waive the funding of reserves in the 2026 budget pursuant to applicable provisions of Association governing documents and applicable law; (d) refund to members 2026 maintenance fees received by the Association, if any, without waiver of the right of the Association to later seek payment of such fees, upon notice to members, and without waiver of member obligations regarding same; (e) immediately suspend reservations (including cancelling any existing reservations with occupancy dates after December 27, 2025) at the resort after December 27, 2025, without waiver of the right of the Association to later accept reservations at the resort upon notice to members; (f) transfer the balance of reserve funds of the Association as of December 31, 2025, as needed, to pay operating expenses and costs of the Association as set forth in the attached limited operations budget for 2026 or any approved budget for the Association, pursuant to applicable provisions of the governing documents and applicable law; and/or (g) take any and all action that they deem necessary or proper regarding the operation and/or management of the Association - **with 99.7039% of the voting interests present at the meeting (in person or by proxy) approving and .2961% of the voting interests disapproving**;

(iv) conveyance of an interest in the Property to the Association - **with 99.4919% of the voting interests present at the meeting (in person or by proxy) approving and .5181% of the voting interests disapproving**; and

(v) take certain actions related to the bankruptcy case – **with 99.6294% of the voting interests present at the meeting (in person or by proxy) voting yes and .3706% of the voting interests voting no**.

52. The draft minutes of the October 2025 IOA Special Meeting are attached at **Exhibit "B"** hereto.

(c) The February 2026 Special Meetings.

53. On February 24, 2026, additional special meetings of the members of both the Condo Association and the Association were held (the "February 2026 Special Meetings").

(d) The February 24 Special Meeting of Members of the Condo Association.

54. The February 24, 2026 Special Meeting of the membership of the Condo Association (the "February 2026 Condo Association Special Meeting") was held to reverse and nullify the bankruptcy-related actions previously approved by the Condo Association at the October 2025 Condo Association Special Meeting. The measure passed unanimously, with 100% of the voting interests voting in favor. This meeting effectively unwound the Condo Association's prior bankruptcy authorization and reflects the reconstitution of the Board of Directors of the Condo Association in January 2026.

(e) The February 24 Special Meeting of Members of the Debtor Association.

55. On February 24, 2026, at another duly called and conducted Special Meeting of the Association Members (pursuant to the By-laws) (the "February 2026 IOA Special Meeting"), the requisite number of Association Members again voted to authorize the Association Board to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to Bankruptcy Court approval, market and sell the Association Property, free and clear of the interests of all interval owners (including non-debtor owners), with such interests to attach to the proceeds of sale, subject to distribution pursuant to Bankruptcy Court order.

56. With 77.9% voting interests represented in person or by Proxy, the Board certified a quorum of at least 25% at the February 2026 Special Meeting. At the February 2026 IOA Special Meeting, members specifically voted to authorize the Board to:

(i) file a chapter 11 bankruptcy case on behalf of the Association – **with 1,295, or 99.85% of the voting interests present at the meeting (in person or by proxy) in favor and 2, or .15% of the voting interests not in favor**;

(ii) engage professionals as the Board deems appropriate to facilitate the bankruptcy proceeding including, but not limited to, legal, accounting, and brokerage professionals – **with 1,295, or 99.85% of the voting interests present at the meeting (in person or by proxy) in favor and 2, or .15% of the voting interests not in favor**;

(iii) take certain actions related to the bankruptcy case – **with 1,295, or 99.85% of the voting interests present at the meeting (in person or by proxy) voting yes and 2 or .15% of the voting interests voting no**.

57. The draft minutes of the membership meeting of February 2026 IOA Special Meeting are attached at **Exhibit "C"** hereto.

## I. Debtor's Intentions in its Bankruptcy Proceeding.

58. Among other things, the Association intends to seek, subject to Bankruptcy Court approval as may be required, certain relief including all or some of the following:

- Judgment against Association Members (by consent or otherwise) authorizing the sale of Debtor's undivided interest in the Property, jointly with the sale of the interests of the Association Members, pursuant to 11 U.S.C. §363(h) and/or other applicable provisions of the Bankruptcy Code. Debtor reserves the right to seek such relief by filing a lawsuit against Association Members.

- Approval of marketing, bid and sale procedures for the Property, other than C-1. **To be clear, Debtor intends to seek authorization to sell the Commercial Units owned by the Association (C-2 and C-3), the**

**Intervals owned by the Association (the Association Interest) and the Intervals owned by the Association Members. Debtor does not intend to seek authorization to sell C-1.**[8]

- Authorization to sell the Property (other than C-1) and all interval interests free and clear of the interests of all members (Debtor and non-debtor), with such interests to attach to the proceeds of sale, subject to distribution by bankruptcy court order in accord with 11 U.S.C. §363(b), (f), (h) and (j) and other applicable provisions of the Bankruptcy Code.[9]

- Termination or amendment of the timeshare plan for the Property effective at or prior to closing of the sale of the Property (other than C-1).

- Authorization to assume and assign to a purchaser, or reject and terminate, all executory contracts and unexpired leases to which the Association is a party – at closing.

- Authorization to distribute net sale proceeds (after costs of administration and sale) as well as all remaining property, cash and reserves of the Association pursuant to a confirmed plan of liquidation or other Bankruptcy Court order. Distribution to Association Members may be subject to set-off of amounts owed to the Association for delinquent maintenance fees and/or special assessments.

- Resolution of all claims against the Association.

- Dissolution of the Association following sale and distribution pursuant to a confirmed plan of liquidation or other Bankruptcy Court order.

**J. Assets and Liabilities of Association.**

59. As of the Petition Date, Debtor carries no secured debt. Debtor funds its operations through the maintenance fees and assessments from Association Members with various interests in the Property. As set forth in Debtor's Petition and statements and schedules, which the Debtor intends to file in the coming days, the Debtor's assets primarily consist of (i) approximately

[8] Upon information and belief, 150 Conanicus Ave LLC owns Unit C-1.

[9] Debtor intends to file a bidding procedures motion, including potentially designating a stalking horse bidder for the Property, as may be appropriate.

$331,883.21 in cash and cash equivalents, (ii) approximately $1,980,895.00 in accounts receivable, and (iii) an undetermined value of the Association Interest in the Property.

60. Debtor's liabilities generally relate to the maintenance and operation of the Property, including, but not limited to, landscaping, housekeeping, and other general maintenance fees. Debtor has been paying its liabilities in the ordinary course leading up to the Petition Date, and Debtor anticipates paying all claims in full as part of this Chapter 11 Case.

**K. First Day Motions.**

61. Concurrently with the filing of the Chapter 11 Case and this Declaration, Debtor filed certain First Day Motions[10] seeking orders granting various forms of relief intended to maintain the Property, facilitate the efficient administration of the Chapter 11 Case, and expedite the sale process.

62. I believe that it is critical that the First Day Motions be heard as soon as practicable. If such motions are not considered on an expedited basis, it could lead to immediate and irreparable harm to the Property and the interval interests owned by the Association Members. I believe approval of the expedited First Day Motions is in the best interest of all interested parties in the Chapter 11 Case.

63. Certain of the First Day Motions request authority to pay prepetition claims against Debtor. I understand that Rule 6003 of the Federal Rules of Bankruptcy Procedures provides, in relevant part, that the Court shall not consider motions to pay prepetition claims during the first twenty-one (21) days following the filing of a chapter 11 case, except to the extent relief is necessary to avoid immediate and irreparable harm. In light of this requirement, Debtor has

[10] Capitalized terms used but not otherwise defined herein shall having the meanings ascribed to them in the applicable First Day Motion.

narrowly tailored its requests for immediate authority to pay certain limited prepetition claims to those instances where failure to pay would cause such immediate and irreparable harm.

64. The First Day Motions include the following[11]:

i. *Debtor's Motion for Epedited Determination for Entry of an Order (I) Authorizing Debtor to Suppress Certain Personally Identifiable Information for Individual Creditors, Interval Owners, and Parties in Interest and (II) Limiting Debtor's Noticing Obligations (the "Noticing Motion")*

65. **Noticing Motion**. Pursuant to the Noticing Motion, Debtor requests authority to (a) suppress certain personally identifiable information for only those creditors and parties in interest that are individual persons (rather than entities or businesses) and (b) limit Debtor's obligations with respect to noticing of pleadings.

66. I believe it is appropriate to authorize Debtor to suppress from any paper filed with the Court in this Chapter 11 Case, the residential addresses and email addresses of individuals that are creditors, Association Members, and parties in interest, because such disclosure may risk violating applicable privacy laws, exposing Debtor to potential civil liability and significant financial penalties. Pursuant to section 107(c) of the Bankruptcy Code and privacy protection regulations being enacted in key jurisdictions, it is appropriate to authorize Debtor to suppress such information to avoid disclosure and potential liability. Omni Agent Solutions, Inc., Debtor's proposed Claims Agent, shall maintain a list of the suppressed individuals for use by Debtor, the United States Trustee, and the Court, upon request.

67. Additionally, Debtor seeks establishment of certain proposed notice procedures for notifying creditors and interest holders of the commencement and administration of the

[11] I have reviewed each of the First Day Motions filed in this Chapter 11 Case (including the exhibits thereto and supporting memoranda) and incorporate by reference the factual allegations and statements set forth therein. To the extent any factual allegations included in a First Day Motion is not expressly provided herein, such statement is adopted in its entirety and incorporated herein.

Chapter 11 Case. Though Debtor has a relatively small number of creditors, it has MORE THAN 400 Association Members with an interest in the Property. In order to alleviate the enormous and costly burden of serving over one thousand parties in interest with each filing (some of which are voluminous), Debtor proposes to create and utilize a Master Service List to serve pleadings and other documents upon parties, including by electronic means where available. The proposed procedures will control over the applicable noticing rules contained in the Bankruptcy Rules and the Local Rules.

68. Debtor further proposes that all filings be made available to all parties in interest on a public website maintained by the Claims Agent. I believe that the relief requested is in the best interest of Debtor's estate, as it will allow for more efficient and cost-saving case administration. Debtor will still provide notice to any party affected by any particular pleading in addition to the Master Service List, and the Interval Owners have also been noticed of the Chapter 11 Case, as there was a meeting of the Association Members conducted on February 24, 2026 to discuss and vote on authorizing the filing of the Chapter 11 Case.

69. I believe that the relief sought in the Notice Motion is prudent and in the best interest of Debtor, its estate, and the parties in interest, as each of the requested notice procedures will allow for the efficient and economical administration of the Chapter 11 Case, including by reducing administrative costs and ensuring the fair and consistent treatment of all parties' interests and rights.

ii. *Debtor's Motion for Expedited Determination for Interim and Final Orders (I) Authorizing Debtor to (A) Continue to Use Existing Cash Management System, (B) Maintain Bank Accounts and Continue Use of Existing Business Forms and Checks, and (C) Honor Certain Related Prepetition and Postpetition Obligations; (II) Determining Compliance with, or Granting a Waiver of, Certain Investment and Deposit Guidelines; and (III) Granting Related Relief (the "Cash Management Motion")*

70. **Cash Management Motion**. Debtor has filed an expedited motion seeking entry of an order: (a) granting Debtor authority to (i) continue to maintain Debtor's existing Cash Management System, including without limitation, to continue to maintain Debtor's existing Bank Account, as defined in the Cash Management Motion, and business forms and (ii) honor certain prepetition and post-petition obligations related thereto; (b) waiving investment and deposit guidelines of section 345 of the Bankruptcy Code and the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees* (the "Guidelines")[12] issued by the Office of the United States Trustee; and (c) providing any additional relief required in order to effectuate the relief requested therein.

71. Debtor maintains a cash management system in the ordinary course of Debtor's business. The Cash Management System is an integrated, centralized system that utilizes one (1) checking account at Fifth Third Bank (account ending x8049) (the "Bank Account"), through which Debtor manages cash receipts and disbursements.

72. The Bank Account serves specific functions within the Cash Management System, including making payments and collecting any receivables. Debtor has specific Investment Guidelines, which are satisfied by the Debtor's continued maintenance of the Bank Account.

73. The account balance in the Bank Account, as of September 30, 2026, was 331,883.21. Fifth Third Bank is an Approved Depository with the United States Trustee, and thus the Bank Account satisfies applicable requirements for continued maintenance of funds held therein during the pendency of the Debtor's chapter 11 case.

[12] Under the Guidelines, a debtor in possession must, among other things, close all existing bank accounts and open new accounts in the name of the debtor-in-possession, establish separate accounts for the payment of taxes and cash collateral/post-petition financing, and obtain new checks and business forms that indicate the debtor's status as a debtor-in-possession. These requirements are designed to provide a clear line of demarcation between prepetition activities and transactions and post-petition activities and transactions, in order to prevent the inadvertent payment of prepetition claims during the pendency of the case.

74. The Cash Management System operates in accordance with ordinary, usual, and essential business practices. Through the Property Manager, Debtor maintains detailed accounting records that track transfers of funds to and from the Bank Accounts as a part of normal operations. The Property Manager will continue these practices as part of ongoing operations during the pendency of this case in order to maintain governance, manage liquidity, and meet court reporting requirements. It is imperative that Debtor be able to continue using its existing Cash Management System, as it is designed to ensure (a) the safety of the cash received, (b) the adequate funding of operations and maintenance as well as taxes, and (c) compliance with local law. Thus, though its operations are relatively simple, its Cash Management System is necessarily complex. Moreover, as noted above, a substantial portion of Collections and remittances are automated for convenience to the Interval Owners as well as Debtor. Debtor has automated payments scheduled and in place with respect to a substantial portion of its operations as do the Interval Owners. I believe any change to this system, therefore, would cause, at best, immediate disruption in collections as well as unnecessary delays, and, at worst, potential violations of applicable law.

75. The unique nature of Debtor's operations and the regulatory regime under which it operates necessitate the continuation of the Cash Management System during the pendency of the Chapter 11 Case. The system is complex and designed specifically to comply with Debtor's obligations as a timeshare association, including to segregate cash related to tax obligations and reserves as well as to control disbursements and ensure cash is generating as high of a rate of return as possible without risking principal. If Debtor were required to create and implement a new cash management system, its operations would be severely disrupted, which would have an adverse impact on Debtor and result in substantial additional costs to the estate.

76. Debtor seeks a waiver of the Guideline requirements so its operations are not disrupted by the need to alter the Cash Management System, as it would create an unnecessary administrative burden and expense for the estate, while likely causing delays in the processing of payments.

77. Debtor requests further relief from the Guidelines to the extent they require Debtor to make all disbursements by check. Considering the complexity of the Cash Management System, Debtor must conduct certain transactions by debit, wire, or ACH payments and to deny Debtor the opportunity to do so would interfere with its performance of its contracts and unnecessarily disrupt its operations.

78. I believe the relief requested in the Cash Management Motion is necessary and proper considering the nature of the Cash Management System. The system, as currently designed, ensures Debtor is able to control its cash inflows and outflows, imposes strict guidelines on Debtor's investments of its cash, and protects the cash that Debtor requires for its continued compliance with law.

iii. *Debtor's Motion for Expedited Determination on Debtor's Application for Entry of an Order Authorizing Debtor to Employ and Retain Omni Agent Solutions, Inc. as Notice, Claims and Solicitation Agent Effective as of the Petition Date (the "Omni Retention Application")*

79. **Omni Agent Solutions, Inc. Retention Application.** Debtor has filed an application requesting the Court approve Debtor's retention of Omni Agent Solutions, Inc. ("Omni") as its Claims Agent. I believe such relief is prudent in light of the hundreds of parties in interest to whom notices may need to be sent. I believe that the most effective and efficient manner by which to give notice and process claims in the Chapter 11 Case is to engage Omni, as an independent third party with significant experience in this role. I believe the relief requested

in the Omni Retention Application is in the best interests of Debtor, its estate, and the Association Members.

iv. *Debtor's Motion for Expedited Determination for Interim and Final Orders Authorizing Debtor to Pay Prepetition Sales, Use, Trust Fund, Property, and Other Taxes and Similar Obligations (the "Tax Motion")*

80. **Tax Motion**. Debtor requests authority, among other things, to pay, in Debtor's sole discretion and in the ordinary course of business, sales, use, trust fund, property, and other taxes, without regard to whether such obligations accrued or arose before or after the Petition Date. I believe the relief requested in the Tax Motion is in the best interest of Debtor's estate, without which, the estate would suffer substantial and irreparable harm.

81. In the ordinary course of operating its business, Debtor (a) incurs certain Taxes and Fees to various Taxing Authorities, and (b) is charged amounts for services related to calculating and estimating such Taxes and Fees. I understand that Debtor is generally current on its tax obligations, with an estimated $0.00 in Taxes and Fees outstanding as of the Petition Date.

82. Debtor must continue to pay certain of these taxes and fees in order to continue operating its business and to avoid potential penalties and distractions during the Chapter 11 Case. Debtor's failure to pay the Taxes and Fees described in the Tax Motion could adversely affect Debtor's business operations, as taxing authorities may assert liens on Debtor's property, assert penalties or interest on past-due amounts, cancel licenses, and/or subject Debtor's directors and officers to personal liability for unpaid amounts. Moreover, Debtor's failure to pay for certain services (including the Accountant Services) related to the Taxes and Fees could result in a delay in paying certain of the Taxes. I believe the relief requested in the Tax Motion is required to avoid these potential disruptions and distractions.

v. *Debtor's Motion for Expedited Determination for Authority to (I) Continue to Administer Insurance Policies and Related Agreements; (II) Honor Certain Obligations in Respect Thereof; and (III) for Related Relief (the "Insurance Motion")*

83. **Insurance Motion**. Debtor has filed an expedited motion requesting the authority but not direction to, among other things, maintain, renew, modify, supplement or purchase, in its sole discretion its Insurance Policies and Programs described therein as well as agreements related thereto.

84. Debtor's Insurance Policies and Programs are crucial to the preservation of the value of Debtor's business, Property, and estate. In many cases, the insurance coverage is required by law and/or the Office of the United States Trustee. The Insurance Policies and Programs are also prudent to continue, as they ensure the protection of the value of the estate in the event a calamity were to occur. By shifting the risk from Debtor and its interest holders to the Insurance Providers under the existing regime of Insurance Policies and Programs, Debtor can efficiently, and economically, protect the estate and its interests. I believe that it is essential for Debtor to maintain the Insurance Policies and Programs in the ordinary course of business as set forth in the Insurance Motion. Debtor's continued operations, combined with its efforts to undertake an orderly sale of the Property, require that the insurance policies be maintained on an ongoing and uninterrupted basis. I believe the relief requested in the Insurance Motion is in the best interests of Debtor, its estate, and the Association Members.

vi. *Debtor's Expedited Motion for Entry of an Order Pursuant to 11 U.S.C. § 105(a) and 366(b): (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services; (II) Deeming Utilities Adequately Assured of Future Performance; (III) Establishing Procedures for Determining Adequate Assurance of Payment; and (IV) Granting Related Relief (the "Utilities Motion")*

85. **Utility Motion**. Debtor has filed an expedited motion seeking the entry of an order (i) prohibiting the Utility Companies from altering, refusing, or discontinuing Utility Services

(defined herein) on account of pre-petition amounts outstanding or on account of any perceived inadequacy of the Debtor's proposed adequate assurance; (ii) determining that the Debtor's Utility Companies (defined herein) have been provided with adequate assurance of payment within the meaning of 11 U.S.C. § 366; (iii) approving the Debtor's proposed adequate assurance and related procedures; (iv) determining that the Debtor is not required to provide any additional adequate assurance beyond what is proposed in this Motion; and (v) granting related relief.

86. The Debtor believes all utility bills are paid current. However, the risk of an interruption of service by any utility could have dire consequences for the estate. The Debtor's estate depends upon uninterrupted utility service to preserve the value of its assets while this Chapter 11 Case is pending. The Debtor relies on the Utility Companies to provide Utility Services to the Property. Moreover, continued Utility Services are required to ensure that the Property remains in a marketable state and does not fall into disrepair after the Debtor ceases operations. As such, any interruption would negatively impact the Debtor's Chapter 11 objectives to the detriment of all parties in interest.

87. Moreover, now that the Property has ceased occupancy, the Debtor needs to continue certain of the Utility Services as it is marketed in order to ensure the components of the Property remain in working condition. Sewage backups, mold/mildew growth, frozen and/or bursting pipes, and degradation of the Property's electrical and structural components could spell doom for the Debtor's marketing efforts during the Chapter 11 Case. Thus, the continuation of the Utility Services is imperative to ensure the Property maintains its value after the Debtor has ceased operations.

88. In an abundance of caution, and to defend against any unfortunate interruption of service by any utility provider, the Debtor filed the Utility Motion. Debtor expects that post-

petition utility bills will be paid in a timely manner, however, I believe that the protection afforded to the Debtor and the estate by the order proposed in the Utility Motion is essential to ensure the continued preservation of the Property on a going forward basis. . I believe the relief requested in the Utility Motion is in the best interests of Debtor, its estate, and the Association Members.

**L. Retention Applications.**

89. Though not part of the First Day Motions, during the course of the Chapter 11 Case, Debtor intends to retain several professionals, for each of which Debtor will file a separate retention application. In particular, Debtor intends to retain (a) Chace Ruttenberg & Freedman LLP, as general bankruptcy counsel, (b) K&L Gates LLP, as special counsel, and (c) Hilco Real Estate, LLC, as real estate agent to Debtor. Moreover, as noted above, Debtor also seeks to retain Omni as its notice and claims agent.

**M. Reservations and Conclusion.**

90. Nothing contained in this Declaration, any First Day Motion, or any relief requested in this Declaration or the First Day Motions, is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of Debtor's or any other party in interest's right to dispute any claim against, or interest in, Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Declaration, the First Day Motions, or any relief requested therein; (f) an implication, admission, or finding as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on the property of Debtor or its estate;

(g) an impairment or waiver of any claims or causes of action which may exist against any entity; or (h) a waiver of Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

91. I have consulted with Debtor's proposed counsel regarding the relief requested in the First Day Motions and understand each of the First Day Motions and the relief requested therein. To the best of my knowledge and belief, and subject to the foregoing reservations, the factual statements contained in each of the First Day Motions are true and accurate, and each such factual statement is incorporated herein by reference.

92. I believe that the relief requested in the First Day Motions is necessary, in the best interests of Debtor's estate, its creditors, the Association Members, and all other parties in interest, and will allow Debtor to operate with minimal disruption and maximize value preservation during the pendency of its bankruptcy case. Failure to grant the relief requested in any of the First Day Motions may result in immediate and irreparable harm to Debtor and its estate. Accordingly, for the reasons set forth herein and in each respective First Day Motion, I request that the Court grant the relief requested in each of the First Day Motions.

I hereby certify that, upon information and belief, the foregoing statements made by me are true and that this Declaration is executed under penalty of perjury. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: November 6, 2026

Signed by:
Brennan Handfield
A76473234252441...

Brennan Handfield
President of the Board of Directors



1607588738.16

# **EXHIBIT A**

to

DECLARATION OF BRENNAN HANDFIELD IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND APPLICATIONS FOR FIRST DAY RELIEF

# Bay Voyage Inn

## TABLE OF CONTENTS

Executive Summary Report........................................ 1
Project Definition........................................ 2
Analysis Definition........................................ 3
Deferred Expenditures Report........................................ 4
Cash Flow Projections........................................ 6
Cash Flow Projections Graph........................................ 7
Projected Expenditures by Component........................................ 8


**Copyright Armstrong Consulting 2025 - All rights reserved.**

# Bay Voyage Inn

## EXECUTIVE SUMMARY REPORT

### Analysis 1 - 2025

### 1/01/2025 - 12/31/2025

| Item | Total Current Replacement Cost on 1/01/2025 | Average Estimated Useful Life on 1/01/2025 | Average Remaining Useful Life on 1/01/2025 | Estimated Fund Balances on 1/01/2025 | 2025 Proposed Reserve Funding | 2025 Assigned Interest Earned | 2025 Projected Expenses | Estimated Fund Balances on 12/31/2025 |
|---|---|---|---|---|---|---|---|---|
| **Capital Improvements** | 2,562,156 | 15.17 | 5.77 | 535,725 | 311,631 | 6,751 | 310,348 | 543,759 |
| **Deferred Expenditure** | | | | | | | 273,120 | -273,120 |
| **Interior** | 1,820,409 | 16.77 | 4.58 | 281,626 | 389,407 | 8,442 | 0 | 679,475 |
| **Painting** | 155,622 | 7.00 | 2.00 | 23,849 | 32,976 | 714 | 0 | 57,539 |
| **Pavement** | 55,338 | 15.00 | 10.33 | 12,080 | 4,181 | 90 | 9,057 | 7,294 |
| **Roofing** | 211,519 | 20.00 | 8.60 | 25,920 | 35,839 | 776 | 0 | 62,535 |
| **Totals:** | **4,805,044** | | | **879,200** | **774,034** | **16,773** | **592,525** | **1,077,482** |

**Rounding May Cause Small Variances When Comparing Reports**
*"Deferred Expenditure" = Payment of Loan or Special Assessment*


Wyndham Vacations Resorts
Copyright Armstrong Consulting 2025 - All rights reserved.

# Bay Voyage Inn

## PROJECT DEFINITION REPORT

7/08/2025

### Project Information

| | | | |
|---|---|---|---|
| Project: | Bay Voyage Inn | Project Date: | 1/01/1908 |
| Address: | 150 Conanicus Avenue | Number of Phases: | 0 |
| City: | Jamestown | Number of Units: | 32 |
| State: | RI | Number of Models: | 0 |
| Zip: | 02835-0000 | | |

### Property Description

The subject property is defined as the Bay Voyage Inn and is located at 150 Conanicus Avenue in Jamestown, Rhode Island. The property is comprised of a four story building with 32 one bedroom units. The 32 units include 7 deluxe units, 3 executive units, 11 standard units and 11 superior units. The superior units contain exterior wood decks. The property it utilizing one 1-bedroom suite as office space (Unit 106).

The building is a wood frame structure. Exterior walls are primarily wood stud with wood sheathing and fiber cement siding. The roof is a combination of low slope with a rubber membrane surface and a pitched mansard with asphalt shingle surface. The building's first level includes a fitness room, mechanical rooms, guest restrooms and a common area interior hall corridor. The main lobby, restaurant, common room, administrative offices, some residential units are at level 2. The remaining residential units are at level 3 and 4 and are accessed through internal guest hall corridors. Upper floor access is provided by one elevator and stairwells.

Recreational improvements include an outdoor swimming pool. Site improvements include an asphalt paved parking area, wood fencing, concrete and asphalt paved walkways and site lighting.

The building was reportedly built in 1908. The most recent site visit occured on September 15th, 2022.

This reserve study report does not include the restaurant interior furniture, fixtures and equipment as well as any mechanical or HVAC systems that directly support this area. Based on discussions with property management, it is assumed that the owner and/or tenant will be responsible for the restaurant.


Copyright Armstrong Consulting 2025 - All rights reserved.

# Bay Voyage Inn

## ANALYSIS DEFINITION REPORT

### Analysis 1 - 2025

**Project Information**

| | | | |
|---|---|---|---|
| Project: | Bay Voyage Inn | Project Date: | 1/01/1908 |
| Address: | 150 Conanicus Avenue | Analysis Date: | 1/01/2025 |
| City: | Jamestown | Number of Phases: | 0 |
| State: | RI | Number of Units: | 32 |
| Zip: | 02835-0000 | Number of Models: | 0 |

**Analysis Parameters**

| | | | |
|---|---|---|---|
| Rate of Inflation: | 3% | Deferred Expenditures: | Yes |
| Rate of Return on Investment: | 2% | Contingency: | 0% |
| Beginning Funds: | 879,200.00 | Contingency Time: | None |
| Loan/Special Assessment: | No | | |

**Annual Contribution Factors**

| | | | | | |
|---|---|---|---|---|---|
| | | 2035: | 3% | 2045: | 3% |
| 2026: | 15% | 2036: | 3% | 2046: | 3% |
| 2027: | 3% | 2037: | 3% | 2047: | 3% |
| 2028: | 3% | 2038: | 3% | 2048: | 3% |
| 2029: | 3% | 2039: | 3% | 2049: | 3% |
| 2030: | 3% | 2040: | 3% | 2050: | 3% |
| 2031: | 3% | 2041: | 3% | 2051: | 3% |
| 2032: | 3% | 2042: | 3% | 2052: | 3% |
| 2033: | 3% | 2043: | 3% | 2053: | 3% |
| 2034: | 3% | 2044: | 3% | 2054: | 3% |

**Additional Analysis Information**

Analysis 1 - 2025 indicates the recommended contributions into reserves to adequately fund future projected reserve expenditures. The analysis period utilized is 30 years. The return on reserve funds invested is currently projected at approximately 2%. The inflation rate estimated for reserve components is 3% per year. The beginning reserve balance on January 1, 2025 is $879,200 based on information provided by property management.

The budgeted annual reserve contribution for the 2025 fiscal year is $774,025 or $506/unit week based on 1,530 unit weeks (30 units x 51 weeks). To adequately meet future reserve expenditures, it will be necessary to increase the 2025 budgeted funding amount by 15% in 2026 and by 3% per year from 2027 through out the analysis period. The lowest reserve balance in this analysis is $540,520 in 2026.

A loan of $950,000 occurred in 2022 with payments occurring monthly in the amount of $22,760 from Jan 2023 to Oct of 2026.


Copyright Armstrong Consulting 2025 - All rights reserved.

# Bay Voyage Inn

## Deferred Expenditures Report

### Analysis 1 - 2025

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **January** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **February** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **March** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **April** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **May** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **June** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **July** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **August** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **September** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **October** | 22,760 | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **November** | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **December** | 22,760 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Totals** | **273,120** | **227,600** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |

| | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 |
|---|---|---|---|---|---|---|---|---|---|---|
| **January** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **February** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **March** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **April** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **May** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **June** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **July** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **August** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **September** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **October** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **November** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **December** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Totals** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |


Copyright Armstrong Consulting 2025 - All rights reserved.

# Bay Voyage Inn

## Deferred Expenditures Report

### Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **January** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **February** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **March** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **April** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **May** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **June** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **July** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **August** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **September** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **October** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **November** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **December** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Totals** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |


Copyright Armstrong Consulting 2025 - All rights reserved.

# Bay Voyage Inn

## CASHFLOW SUMMARY PROJECTIONS

### Analysis 1 - 2025

| Year | Beginning Balance | Contribution | Interest Earned | Expenditures | Ending Balance | End Bal % Fund |
|---|---|---|---|---|---|---|
| 2025 | 879,200.00 | 774,025.10 | 16,762.25 | 592,525.00 | 1,077,462.35 | 31.04% |
| 2026 | 1,077,462.35 | 890,128.87 | 4,454.88 | 1,431,526.00 | 540,520.10 | 20.10% |
| 2027 | 540,520.10 | 916,832.74 | 14,963.77 | 294,416.00 | 1,177,900.61 | 40.64% |
| 2028 | 1,177,900.61 | 944,337.72 | 31,027.53 | 150,958.00 | 2,002,307.86 | 60.52% |
| 2029 | 2,002,307.86 | 972,667.85 | 46,081.52 | 244,990.00 | 2,776,067.23 | 78.47% |
| 2030 | 2,776,067.23 | 1,001,847.89 | 36,488.59 | 1,509,677.00 | 2,304,726.71 | 91.39% |
| 2031 | 2,304,726.71 | 1,031,903.33 | 56,292.89 | 73,594.00 | 3,319,328.93 | 112.02% |
| 2032 | 3,319,328.93 | 1,062,860.43 | 74,627.62 | 196,733.00 | 4,260,083.98 | 129.52% |
| 2033 | 4,260,083.98 | 1,094,746.24 | 97,397.53 | 26,838.00 | 5,425,389.75 | 143.36% |
| 2034 | 5,425,389.75 | 1,127,588.63 | 112,957.77 | 439,128.00 | 6,226,808.15 | 160.33% |
| 2035 | 6,226,808.15 | 1,161,416.29 | 133,648.09 | 233,953.00 | 7,287,919.53 | 173.69% |
| 2036 | 7,287,919.53 | 1,196,258.78 | 159,572.27 | 29,770.00 | 8,613,980.58 | 182.69% |
| 2037 | 8,613,980.58 | 1,232,146.54 | 180,733.08 | 327,046.00 | 9,699,814.20 | 196.11% |
| 2038 | 9,699,814.20 | 1,269,110.94 | 179,076.33 | 1,514,905.00 | 9,633,096.47 | 238.25% |
| 2039 | 9,633,096.47 | 1,307,184.27 | 203,923.88 | 237,965.00 | 10,906,239.62 | 246.67% |
| 2040 | 10,906,239.62 | 1,346,399.80 | 230,450.98 | 218,310.00 | 12,264,780.40 | 254.82% |
| 2041 | 12,264,780.40 | 1,386,791.79 | 252,575.86 | 502,744.00 | 13,401,404.05 | 269.57% |
| 2042 | 13,401,404.05 | 1,428,395.54 | 282,345.71 | 187,235.00 | 14,924,910.30 | 275.66% |
| 2043 | 14,924,910.30 | 1,471,247.41 | 309,605.86 | 383,595.00 | 16,322,168.57 | 286.39% |
| 2044 | 16,322,168.57 | 1,515,384.83 | 344,034.67 | 99,315.00 | 18,082,273.07 | 288.19% |
| 2045 | 18,082,273.07 | 1,560,846.37 | 371,127.17 | 541,988.00 | 19,472,258.61 | 303.13% |
| 2046 | 19,472,258.61 | 1,607,671.76 | 354,493.88 | 2,781,162.00 | 18,653,262.25 | 415.04% |
| 2047 | 18,653,262.25 | 1,655,901.91 | 393,140.09 | 73,935.00 | 20,628,369.25 | 395.73% |
| 2048 | 20,628,369.25 | 1,705,578.97 | 428,506.24 | 324,066.00 | 22,438,388.46 | 394.08% |
| 2049 | 22,438,388.46 | 1,756,746.34 | 468,388.29 | 186,225.00 | 24,477,298.09 | 387.46% |
| 2050 | 24,477,298.09 | 1,809,448.73 | 509,662.27 | 209,157.00 | 26,587,252.09 | 387.63% |
| 2051 | 26,587,252.09 | 1,863,732.19 | 529,847.92 | 1,348,564.00 | 27,632,268.20 | 432.67% |
| 2052 | 27,632,268.20 | 1,919,644.16 | 571,591.27 | 356,086.00 | 29,767,417.63 | 431.46% |
| 2053 | 29,767,417.63 | 1,977,233.48 | 606,113.26 | 812,345.00 | 31,538,419.37 | 448.60% |
| 2054 | 31,538,419.37 | 2,036,550.48 | 601,824.55 | 2,827,813.00 | 31,348,981.40 | 594.76% |
| **Totals:** | | **41,024,629.38** | **7,601,716.02** | **18,156,564.00** | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# Bay Voyage Inn

## CASHFLOW PROJECTIONS GRAPH

### Analysis 1 - 2025






**Wyndham Vacations Resorts**

Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **ADA Improvements-Bathroom-Fitness Center** | | 340,106 | | | | | | | | |
| **ADA Improvements-Unit Modification** | | | | | | 53,761 | | | | |
| **Appliances-Microwave-Deluxe** | | | | | | 10,039 | | | | |
| **Appliances-Microwave-Executive** | | | | | | 4,303 | | | | |
| **Appliances-Microwave-Standard** | | | | | | 15,776 | | | | |
| **Appliances-Microwave-Superior** | | | | | | 15,776 | | | | |
| **Appliances-Refrigerator-Deluxe** | | | | | | 8,092 | | | | |
| **Appliances-Refrigerators-Executive** | | | | | | 3,113 | | | | |
| **Appliances-Refrigerators-Standard** | | | | | | 11,415 | | | | |
| **Appliances-Refrigerators-Superior** | | | | | | 11,415 | | | | |
| **Asphalt-Parking-Slurry Seal** | 9,057 | | | | | 10,500 | | | | |
| **Attic Stock-Units** | | | | | | 9,840 | | | | |
| **Awning Replace (Handicap Entrance)** | | | | | 7,168 | | | | | |
| **Baseboards-Replace-Deluxe** | | | | | | 7,710 | | | | |
| **Baseboards-Replace-Executive** | | | | | | 3,304 | | | | |
| **Baseboards-Replace-Standard** | | | | | | 12,116 | | | | |
| **Baseboards-Replace-Superior** | | | | | | 12,116 | | | | |
| **Bathroom Accessories-Deluxe** | | 3,060 | | | | | | | | |
| **Bathroom Accessories-Executive** | | 1,311 | | | | | | | | |
| **Bathroom Accessories-Standard** | | 4,808 | | | | | | | | |
| **Bathroom Accessories-Superior** | | 4,808 | | | | | | | | |
| **Bathroom Renovations-Fitness Center** | | 51,655 | | | | | | | | |
| **Bathtub-Deluxe** | | 15,406 | | | | | | | | |
| **Bathtub-Executive** | | 6,603 | | | | | | | | |
| **Bathtub-Standard** | | 24,210 | | | | | | | | |
| **Bathtub-Superior** | | 24,210 | | | | | | | | |
| **Bed Frame/Pedestal (Queen)-Deluxe** | | | | | | 1,070 | | | | |
| **Bed Frame/Pedestal (Queen)-Executive** | | | | | | 459 | | | | |
| **Bed Frame/Pedestal (Queen)-Standard** | | | | | | 1,681 | | | | |
| **Bed Frame/Pedestal (Queen)-Superior** | | | | | | 1,681 | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Bed Top Package-Deluxe** | | | | | | 3,870 | | | | |
| **Bed Top Package-Executive** | | | | | | 1,659 | | | | |
| **Bed Top Package-Standard** | | | | | | 6,082 | | | | |
| **Bed Top Package-Superior** | | | | | | 6,082 | | | | |
| **Boiler-Domestic Water** | | | | | | | | | | 55,378 |
| **Cabinet/Credenza-Front Desk** | | | | | | 6,606 | | | | |
| **Cabinets (Bath)-Deluxe** | | 11,627 | | | | | | | | |
| **Cabinets (Bath)-Executive** | | 2,491 | | | | | | | | |
| **Cabinets (Bath)-Standard** | | 9,135 | | | | | | | | |
| **Cabinets (Bath)-Superior** | | 18,270 | | | | | | | | |
| **Cabinets (Kitchen)-Deluxe** | | | | | | 25,829 | | | | |
| **Cabinets (Kitchen)-Executive** | | | | | | 11,070 | | | | |
| **Cabinets (Kitchen)-Standard** | | | | | | 32,471 | | | | |
| **Cabinets (Kitchen)-Superior** | | | | | | 43,295 | | | | |
| **Chair-Armchair (LR)-Deluxe** | | | | | | 8,965 | | | | |
| **Chair-Armchair (LR)-Executive** | | | | | | 2,562 | | | | |
| **Chair-Armchair (LR)-Standard** | | | | | | 11,527 | | | | |
| **Chair-Armchair (LR)-Superior** | | | | | | 14,088 | | | | |
| **Chair-Armchair (MBR)-Deluxe** | | | | | | 2,949 | | | | |
| **Chair-Armchair (MBR)-Executive** | | | | | | 2,949 | | | | |
| **Chair-Armchair (MBR)-Standard** | | | | | | 10,815 | | | | |
| **Chair-Armchair (MBR)-Superior** | | | | | | 3,933 | | | | |
| **Chair-Dining Reupholster-Deluxe** | | | | | | 2,181 | | | | |
| **Chair-Dining Reupholster-Executive** | | | | | | 935 | | | | |
| **Chair-Dining Reupholster-Standard** | | | | | | 3,428 | | | | |
| **Chair-Dining Reupholster-Superior** | | | | | | 3,428 | | | | |
| **Counters (Granite)-Bath Vanity-Deluxe** | | 6,961 | | | | | | | | |
| **Counters (Granite)-Bath Vanity-Executive** | | 1,492 | | | | | | | | |
| **Counters (Granite)-Bath Vanity-Standard** | | 5,469 | | | | | | | | |
| **Counters (Granite)-Bath Vanity-Superior** | | 10,938 | | | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Counters (Granite)-Kitchen-Deluxe** | | | | | | 11,623 | | | | |
| **Counters (Granite)-Kitchen-Executive** | | | | | | 4,981 | | | | |
| **Counters (Granite)-Kitchen-Standard** | | | | | | 14,612 | | | | |
| **Counters (Granite)-Kitchen-Superior** | | | | | | 18,265 | | | | |
| **Deferred Expenditure** | 273,120 | 227,600 | | | | | | | | |
| **Doors-Common Area Replace-Allowance** | | | 12,299 | | | | | 14,259 | | |
| **Doors-Guest Facing Replace-Allowance** | | | 20,159 | | | | | 23,371 | | |
| **Dresser (Mini)-Executive** | | | | | | 3,973 | | | | |
| **Dresser (Mini)-Standard** | | | | | | 7,284 | | | | |
| **Dresser (Mini)-Superior** | | | | | | 7,284 | | | | |
| **Dresser-Deluxe** | | | | | | 6,380 | | | | |
| **Dresser-Executive** | | | | | | 5,469 | | | | |
| **Dresser-Standard** | | | | | | 10,026 | | | | |
| **Dresser-Superior** | | | | | | 10,026 | | | | |
| **Elevator ADA Lift** | | | | | | | 26,098 | | | |
| **Elevator Cab Refurbish** | | | | | | | 31,672 | | | |
| **Entertainment Credenza-Deluxe** | | | | | | 6,926 | | | | |
| **Entertainment Credenza-Executive** | | | | | | 2,968 | | | | |
| **Entertainment Credenza-Standard** | | | | | | 10,883 | | | | |
| **Entertainment Credenza-Superior** | | | | | | 10,883 | | | | |
| **Fencing-Metal-Pool** | 18,036 | | | | | | | | | |
| **Fencing-Wood-2000** | 9,998 | | | | | | | | | |
| **Fencing-Wood-2013** | | | | | | | | | 13,301 | |
| **Fire Alarm System Modernize** | | 93,906 | | | | | | | | |
| **Fire Pump-30 HP** | 33,598 | | | | | | | | | |
| **Fixtures-Faucet (Bath)-Deluxe** | | 2,152 | | | | | | | | |
| **Fixtures-Faucet (Bath)-Executive** | | 922 | | | | | | | | |
| **Fixtures-Faucet (Bath)-Standard** | | 3,382 | | | | | | | | |
| **Fixtures-Faucet (Bath)-Superior** | | 3,382 | | | | | | | | |
| **Fixtures-Faucet (Kitchenette)-Dlx.** | | | | | | 2,423 | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Fixtures-Faucet (Kitchenette)-Exec.** | | | | | | 1,038 | | | | |
| **Fixtures-Faucet (Kitchenette)-Std.** | | | | | | 3,807 | | | | |
| **Fixtures-Faucet (Kitchenette)-Sup.** | | | | | | 3,807 | | | | |
| **Fixtures-Faucet (Tub/Shower)-Deluxe** | | 3,406 | | | | | | | | |
| **Fixtures-Faucet (Tub/Shower)-Executive** | | 1,460 | | | | | | | | |
| **Fixtures-Faucet (Tub/Shower)-Standard** | | 5,352 | | | | | | | | |
| **Fixtures-Faucet (Tub/Shower)-Superior** | | 5,352 | | | | | | | | |
| **Fixtures-Sink (Bath)-Deluxe** | | 2,583 | | | | | | | | |
| **Fixtures-Sink (Bath)-Executive** | | 1,107 | | | | | | | | |
| **Fixtures-Sink (Bath)-Standard** | | 4,059 | | | | | | | | |
| **Fixtures-Sink (Bath)-Superior** | | 4,059 | | | | | | | | |
| **Fixtures-Sink (Kitchenette)-Dlx.** | | | | | | 2,907 | | | | |
| **Fixtures-Sink (Kitchenette)-Exec.** | | | | | | 1,246 | | | | |
| **Fixtures-Sink (Kitchenette)-Std.** | | | | | | 4,568 | | | | |
| **Fixtures-Sink (Kitchenette)-Sup.** | | | | | | 4,568 | | | | |
| **Flooring- Carpet (Units)- Deluxe** | | 17,134 | | | | 19,286 | | | | |
| **Flooring-Carpet (Units)-Executive** | | 10,071 | | | | 11,335 | | | | |
| **Flooring-Carpet (Units)-Standard** | | 33,079 | | | | 37,234 | | | | |
| **Flooring-Carpet (Units)-Superior** | | 38,464 | | | | 43,295 | | | | |
| **Flooring-Carpet-Common Room** | | 11,399 | | | | | | | | 14,443 |
| **Flooring-Carpet-Guest Corridors** | | 34,198 | | | | 38,493 | | | | |
| **Flooring-Carpet-Office** | | | | | | 2,645 | | | | |
| **Flooring-Carpet-Stairwells** | | 13,553 | | | | 15,256 | | | | |
| **Flooring-Rubber-Fitness Center** | | | | | 8,358 | | | | | |
| **Flooring-Tile (Units)-Deluxe** | | | | | | 6,509 | | | | |
| **Flooring-Tile (Units)-Executive** | | | | | | 2,989 | | | | |
| **Flooring-Tile (Units)-Standard** | | | | | | 8,402 | | | | |
| **Flooring-Tile (Units)-Superior** | | | | | | 6,575 | | | | |
| **Furnishings-Common Room Case Goods** | | | | | | 6,279 | | | | |
| **Furnishings-Common Room Soft Goods** | | | | | | 12,223 | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Furnishings-Lobby Case Goods** | | | | | | 10,572 | | | | |
| **Furnishings-Lobby Soft Goods** | | | | | | 8,258 | | | | |
| **Headboard/Bedpost (Queen)-Deluxe** | | | | | | 5,181 | | | | |
| **Headboard/Bedpost (Queen)-Executive** | | | | | | 2,220 | | | | |
| **Headboard/Bedpost (Queen)-Standard** | | | | | | 8,141 | | | | |
| **Headboard/Bedpost (Queen)-Superior** | | | | | | 8,141 | | | | |
| **HVAC-Package Wall Unit-Units** | | | | | 208,780 | | | | | |
| **HVAC-Spilt System (3 Ton)-Fitness Center** | | | | | 7,851 | | | | | |
| **HVAC-Spilt System (4 Ton)-Lobby** | | | | | | 9,840 | | | | |
| **Lighting-Battery Back Up Lights** | | | | | | | | | | 12,548 |
| **Lighting-Ceiling Fixture-Deluxe** | | | | | | 1,636 | | | | |
| **Lighting-Ceiling Fixture-Entry-Deluxe** | | | | | | 1,636 | | | | |
| **Lighting-Ceiling Fixture-Entry-Executive** | | | | | | 701 | | | | |
| **Lighting-Ceiling Fixture-Entry-Standard** | | | | | | 2,571 | | | | |
| **Lighting-Ceiling Fixture-Entry-Superior** | | | | | | 2,571 | | | | |
| **Lighting-Ceiling Fixture-Executive** | | | | | | 701 | | | | |
| **Lighting-Ceiling Fixture-Standard** | | | | | | 2,571 | | | | |
| **Lighting-Lamp-End Table/Nightstand-Dlx.** | | | | | | 3,763 | | | | |
| **Lighting-Lamp-End Table/Nightstand-Exec.** | | | | | | 1,613 | | | | |
| **Lighting-Lamp-End Table/Nightstand-Std.** | | | | | | 5,913 | | | | |
| **Lighting-Lamp-End Table/Nightstand-Sup.** | | | | | | 5,913 | | | | |
| **Lighting-Lamp-Floor-Deluxe** | | | | | | 4,036 | | | | |
| **Lighting-Lamp-Floor-Executive** | | | | | | 1,730 | | | | |
| **Lighting-Lamp-Floor-Standard** | | | | | | 6,342 | | | | |
| **Lighting-Lamp-Floor-Superior** | | | | | | 6,342 | | | | |
| **Lighting-Pendant-Lobby** | | | | | | 576 | | | | |
| **Lighting-Rec. Downlights-Lobby/Corridors** | | | | | | 12,855 | | | | |
| **Lighting-Sconce (Bath)-Deluxe** | | 1,550 | | | | | | | | |
| **Lighting-Sconce (Bath)-Executive** | | 664 | | | | | | | | |
| **Lighting-Sconce (Bath)-Standard** | | 2,436 | | | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lighting-Sconce (Bath)-Superior** | | 2,436 | | | | | | | | |
| **Lighting-Site Post Lights** | | | | | | 32,564 | | | | |
| **Lockset Assemblies** | 56,172 | | | | | | | | | |
| **Love Seat (LR)-Executive** | | | | | | 3,958 | | | | |
| **Love Seat (LR)-Supreme** | | | | | | 1,916 | | | | |
| **Mattress/Boxspring (Queen)-Deluxe** | | | | | | 6,194 | | | | |
| **Mattress/Boxspring (Queen)-Executive** | | | | | | 2,655 | | | | |
| **Mattress/Boxspring (Queen)-Standard** | | | | | | 9,734 | | | | |
| **Mattress/Boxspring (Queen)-Superior** | | | | | | 9,734 | | | | |
| **Mirror-Bath Vanity-Deluxe** | | 1,550 | | | | | | | | |
| **Mirror-Bath Vanity-Executive** | | 664 | | | | | | | | |
| **Mirror-Bath Vanity-Standard** | | 2,436 | | | | | | | | |
| **Mirror-Bath Vanity-Superior** | | 2,436 | | | | | | | | |
| **Nightstands-Deluxe** | | | | | | 6,980 | | | | |
| **Nightstands-Executive** | | | | | | 2,992 | | | | |
| **Nightstands-Standard** | | | | | | 10,969 | | | | |
| **Nightstands-Superior** | | | | | | 10,969 | | | | |
| **Paint Interior-Ceilings-Deluxe** | | 7,710 | | | | | | | | |
| **Paint Interior-Ceilings-Executive** | | 4,468 | | | | | | | | |
| **Paint Interior-Ceilings-Standard** | | 14,640 | | | | | | | | |
| **Paint Interior-Ceilings-Superior** | | 16,828 | | | | | | | | |
| **Paint Interior-Common Room** | | | | | | 3,666 | | | | |
| **Paint Interior-Fitness Center** | | | | 4,458 | | | | | | |
| **Paint Interior-Guest Corridors** | | 34,215 | | | | | | | | |
| **Paint Interior-Main Lobby** | | | | | | 6,938 | | | | |
| **Paint Interior-Stairwells** | | 13,658 | | | | | | | | |
| **Paint Interior-Walls/Trim-Deluxe** | | 27,017 | | | | 30,410 | | | | |
| **Paint Interior-Walls/Trim-Executive** | | 13,847 | | | | 15,586 | | | | |
| **Paint Interior-Walls/Trim-Standard** | | 44,306 | | | | 49,871 | | | | |
| **Paint Interior-Walls/Trim-Superior** | | 49,234 | | | | 55,418 | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Paint/Waterproof Seal-Building Exterior** | | | 165,099 | | | | | | | 203,084 |
| **Pool ADA Lift** | 10,684 | | | | | | | | 13,537 | |
| **Pool Deck Furniture** | 13,251 | | | | | | 15,824 | | | |
| **Pool Deck Recoat/Repairs** | | | 15,765 | | | | | | | |
| **Pool Filter/Pump** | | | | | 12,833 | | | | | |
| **Pool Resurface** | | | 40,317 | | | | | | | |
| **Roof-Asphalt Shingle-Roof Deck** | | 19,232 | | | | | | | | |
| **Roof-Membrane EPDM** | | | | | | | | | | 153,675 |
| **Roof-Storage Building** | | 1,967 | | | | | | | | |
| **Sign Replacement-Common** | | 16,310 | | | | | | | | |
| **Sign Replacement-Units** | | 4,196 | | | | | | | | |
| **Sofa/Sleeper (LR)-Deluxe** | | | | | | 24,107 | | | | |
| **Sofa/Sleeper (LR)-Executive** | | | | | | 10,332 | | | | |
| **Sofa/Sleeper (LR)-Standard** | | | | | | 37,883 | | | | |
| **Sofa/Sleeper (LR)-Superior** | | | | | | 37,883 | | | | |
| **Sound System-Fitness Center** | | | | 4,845 | | | | | | |
| **Table-Cocktail-Deluxe** | | | | | | 4,363 | | | | |
| **Table-Cocktail-Executive** | | | | | | 1,870 | | | | |
| **Table-Cocktail-Standard** | | | | | | 6,856 | | | | |
| **Table-Cocktail-Superior** | | | | | | 6,856 | | | | |
| **Table-End Table-Deluxe** | | | | | | 3,817 | | | | |
| **Table-End Table-Executive** | | | | | | 3,272 | | | | |
| **Table-End Table-Standard** | | | | | | 5,999 | | | | |
| **Table-End Table-Superior** | | | | | | 5,999 | | | | |
| **Telephone/PBX-Upgrade** | | | | 141,655 | | | | | | |
| **Television (Bedroom)-Deluxe** | | | | | | 5,189 | | | | |
| **Television (Bedroom)-Deluxe Partial** | | | | | | 2,075 | | | | |
| **Television (Bedroom)-Executive** | | | | | | 3,113 | | | | |
| **Television (Bedroom)-Standard** | | | | | | 4,151 | | | | |
| **Television (Bedroom)-Standard Partial** | | | | | | 7,264 | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2025 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 | 2032 | 2033 | 2034 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Television (Bedroom)-Superior** | | | | | | 11,415 | | | | |
| **Television (Living Room)-Deluxe** | | | | | | 9,655 | | | | |
| **Television (Living Room)-Executive** | | | | | | 4,138 | | | | |
| **Television (Living Room)-Standard** | | | | | | 15,172 | | | | |
| **Television (Living Room)-Superior** | | | | | | 15,172 | | | | |
| **Tile Shower Surround-Deluxe** | | 12,392 | | | | | | | | |
| **Tile Shower Surround-Executive** | | 5,311 | | | | | | | | |
| **Tile Shower Surround-Standard** | | 19,472 | | | | | | | | |
| **Tile Shower Surround-Superior** | | 19,472 | | | | | | | | |
| **Tile-Kitchen Backsplash-Deluxe** | | | | | | 2,325 | | | | |
| **Tile-Kitchen Backsplash-Executive** | | | | | | 996 | | | | |
| **Tile-Kitchen Backsplash-Standard** | | | | | | 3,653 | | | | |
| **Tile-Kitchen Backsplash-Superior** | | | | | | 3,653 | | | | |
| **Toilets-Deluxe** | | 5,523 | | | | | | | | |
| **Toilets-Executive** | | 2,367 | | | | | | | | |
| **Toilets-Standard** | | 8,679 | | | | | | | | |
| **Toilets-Superior** | | 8,679 | | | | | | | | |
| **Trash Enclosure** | 5,305 | | | | | | | | | |
| **Valve Replace Allowance-Dom./Fire Sprinkler** | | 8,651 | | | | | | | | |
| **Vehicle-Truck-Ford Ranger** | 33,949 | | | | | | | | | |
| **Wifi Upgrade** | 129,355 | | | | | | | 159,103 | | |
| **Window Treatments-Deluxe** | | | | | | 23,667 | | | | |
| **Window Treatments-Executive** | | | | | | 13,088 | | | | |
| **Window Treatments-Standard** | | | | | | 47,989 | | | | |
| **Window Treatments-Superior** | | | | | | 47,989 | | | | |
| **Wood Decking (Trex)** | | | 40,777 | | | | | | | |
| **Totals** | **592,525** | **1,431,526** | **294,416** | **150,958** | **244,990** | **1,509,677** | **73,594** | **196,733** | **26,838** | **439,128** |



Wyndham Vacations Resorts
Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Artwork/Décor-Common Areas** | | | | 7,896 | | | | | | |
| **Artwork/Décor-Deluxe** | | | | 8,775 | | | | | | |
| **Artwork/Décor-Executive** | | | | 4,708 | | | | | | |
| **Artwork/Décor-Standard** | | | | 13,789 | | | | | | |
| **Artwork/Décor-Superior** | | | | 13,789 | | | | | | |
| **Asphalt-Parking-Overlay** | | | | | | | 72,043 | | | |
| **Asphalt-Parking-Slurry Seal** | 12,173 | | | | | 14,113 | | | | |
| **Asphalt-Service Entrance-Overlay** | | | | | | 2,182 | | | | |
| **Attic Stock-Units** | | | | 12,467 | | | | | | |
| **Awning Replace (Handicap Entrance)** | | | | | 9,635 | | | | | |
| **Bathroom Accessories-Deluxe** | | | | 4,363 | | | | | | |
| **Bathroom Accessories-Executive** | | | | 1,870 | | | | | | |
| **Bathroom Accessories-Standard** | | | | 6,857 | | | | | | |
| **Bathroom Accessories-Superior** | | | | 6,857 | | | | | | |
| **Bed Frame/Pedestal (Queen)-Deluxe** | | | | 1,356 | | | | | | |
| **Bed Frame/Pedestal (Queen)-Executive** | | | | 581 | | | | | | |
| **Bed Frame/Pedestal (Queen)-Standard** | | | | 2,130 | | | | | | |
| **Bed Frame/Pedestal (Queen)-Superior** | | | | 2,130 | | | | | | |
| **Bed Top Package-Deluxe** | | | | 4,903 | | | | | | |
| **Bed Top Package-Executive** | | | | 2,101 | | | | | | |
| **Bed Top Package-Standard** | | | | 7,705 | | | | | | |
| **Bed Top Package-Superior** | | | | 7,705 | | | | | | |
| **Chair-Armchair (LR)-Deluxe** | | | | 11,359 | | | | | | |
| **Chair-Armchair (LR)-Executive** | | | | 3,245 | | | | | | |
| **Chair-Armchair (LR)-Standard** | | | | 14,604 | | | | | | |
| **Chair-Armchair (LR)-Superior** | | | | 17,850 | | | | | | |
| **Chair-Armchair (MBR)-Deluxe** | | | | 3,737 | | | | | | |
| **Chair-Armchair (MBR)-Executive** | | | | 3,737 | | | | | | |
| **Chair-Armchair (MBR)-Standard** | | | | 13,702 | | | | | | |
| **Chair-Armchair (MBR)-Superior** | | | | 4,983 | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

### Bay Voyage Inn - Analysis 1 - 2025

| | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Chair-Dining-Deluxe** | | | | 8,015 | | | | | | |
| **Chair-Dining-Executive** | | | | 3,435 | | | | | | |
| **Chair-Dining-Standard** | | | | 12,595 | | | | | | |
| **Chair-Dining-Superior** | | | | 12,595 | | | | | | |
| **Doors-Balcony French Doors-Units** | | | | | | | | | | 99,315 |
| **Doors-Common Area Replace-Allowance** | | | 16,532 | | | | | 19,167 | | |
| **Doors-Entry-Deluxe** | | | | 16,363 | | | | | | |
| **Doors-Entry-Executive** | | | | 7,013 | | | | | | |
| **Doors-Entry-Standard** | | | | 25,713 | | | | | | |
| **Doors-Entry-Superior** | | | | 25,713 | | | | | | |
| **Doors-Guest Facing Replace-Allowance** | | | 27,098 | | | | | 31,417 | | |
| **Doors-Interior-Deluxe** | | | | 14,647 | | | | | | |
| **Doors-Interior-Executive** | | | | 6,277 | | | | | | |
| **Doors-Interior-Standard** | | | | 34,526 | | | | | | |
| **Doors-Interior-Superior** | | | | 23,017 | | | | | | |
| **Elevator ADA Lift** | | | | | | | 35,081 | | | |
| **Elevator Cab Refurbish** | | | | | | | | | 45,167 | |
| **Elevator Mechanical Modernize** | | | | | | | | | 225,837 | |
| **Fitness Equipment** | | 18,141 | | | | | | | | |
| **Fixtures-Faucet (Bath)-Deluxe** | | | | 3,069 | | | | | | |
| **Fixtures-Faucet (Bath)-Executive** | | | | 1,315 | | | | | | |
| **Fixtures-Faucet (Bath)-Standard** | | | | 4,823 | | | | | | |
| **Fixtures-Faucet (Bath)-Superior** | | | | 4,823 | | | | | | |
| **Flooring- Carpet (Units)- Deluxe** | | | | 24,435 | | | | | | |
| **Flooring-Carpet (Units)-Executive** | | | | 14,362 | | | | | | |
| **Flooring-Carpet (Units)-Standard** | | | | 47,174 | | | | | | |
| **Flooring-Carpet (Units)-Superior** | | | | 54,854 | | | | | | |
| **Flooring-Carpet-Common Room** | | | | | | | | 18,298 | | |
| **Flooring-Carpet-Guest Corridors** | | | | 48,770 | | | | | | |
| **Flooring-Carpet-Stairwells** | | | | 19,329 | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Flooring-Rubber-Fitness Center** | | | | | 11,234 | | | | | |
| **Flooring-Tile-Main Lobby** | | | | 5,679 | | | | | | |
| **Flooring-Wood-Main Lobby** | | | | 28,754 | | | | | | |
| **Front Desk Refurbish/Replace-Lobby** | | | | 16,740 | | | | | | |
| **Furnishings-Common Room Soft Goods** | | | | 15,487 | | | | | | |
| **Furnishings-Lobby Soft Goods** | | | | 10,463 | | | | | | |
| **Gutters (Internal) & Downspouts-Res. Bldg.** | | | | | | | 68,760 | | | |
| **HVAC-Package Wall Unit-Units** | | | 264,519 | | | | | | | |
| **HVAC-Spilt System (3 Ton)-Fitness Center** | | | | | | | 11,196 | | | |
| **HVAC-Spilt System (4 Ton)-Lobby** | | | | | | | | 14,033 | | |
| **Ice Machine** | 10,721 | | | | | | | | | |
| **Lighting-Exit Lights** | | | | | 4,138 | | | | | |
| **Lighting-Rec. Downlights-Fitness Center** | | | | | | | | 7,854 | | |
| **Lighting-Wall Sconce-Lobby/Corridors** | | | | 1,263 | | | | | | |
| **Lockset Assemblies** | 75,503 | | | | | | | | | |
| **Love Seat (LR)-Executive** | | | | 5,014 | | | | | | |
| **Love Seat (LR)-Supreme** | | | | 2,428 | | | | | | |
| **Mattress/Boxspring (Queen)-Deluxe** | | | | 7,848 | | | | | | |
| **Mattress/Boxspring (Queen)-Executive** | | | | 3,363 | | | | | | |
| **Mattress/Boxspring (Queen)-Standard** | | | | 12,332 | | | | | | |
| **Mattress/Boxspring (Queen)-Superior** | | | | 12,332 | | | | | | |
| **Mirror-Bath Vanity-Deluxe** | | | | 2,211 | | | | | | |
| **Mirror-Bath Vanity-Executive** | | | | 947 | | | | | | |
| **Mirror-Bath Vanity-Standard** | | | | 3,474 | | | | | | |
| **Mirror-Bath Vanity-Superior** | | | | 3,474 | | | | | | |
| **Paint Interior-Ceilings-Deluxe** | | | | 10,996 | | | | | | |
| **Paint Interior-Ceilings-Executive** | | | | 6,372 | | | | | | |
| **Paint Interior-Ceilings-Standard** | | | | 20,879 | | | | | | |
| **Paint Interior-Ceilings-Superior** | | | | 23,999 | | | | | | |
| **Paint Interior-Common Room** | | | | 4,645 | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

### Bay Voyage Inn - Analysis 1 - 2025

| | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Paint Interior-Fitness Center** | | | | 5,993 | | | | | | |
| **Paint Interior-Guest Corridors** | | | | 48,794 | | | | | | |
| **Paint Interior-Main Lobby** | | | | 8,790 | | | | | | |
| **Paint Interior-Stairwells** | | | | 19,477 | | | | | | |
| **Paint Interior-Walls/Trim-Deluxe** | | | | 38,529 | | | | | | |
| **Paint Interior-Walls/Trim-Executive** | | | | 19,747 | | | | | | |
| **Paint Interior-Walls/Trim-Standard** | | | | 63,185 | | | | | | |
| **Paint Interior-Walls/Trim-Superior** | | | | 70,213 | | | | | | |
| **Paint/Waterproof Seal-Building Exterior** | | | | | | | 249,808 | | | |
| **Pool ADA Lift** | | | | | | | 17,151 | | | |
| **Pool Coping Replace/Repair** | 11,978 | | | | | | | | | |
| **Pool Deck Furniture** | | | 18,897 | | | | | | 22,566 | |
| **Pool Deck Recoat/Repairs** | 19,974 | | | | | | | | 25,306 | |
| **Pool Filter/Pump** | | | | | 17,249 | | | | | |
| **Pool Resurface** | 51,081 | | | | | | | | 64,719 | |
| **Pool Tile Replace/Refurbish** | 6,891 | | | | | | | | | |
| **Roof-Asphalt Shingle-Mansard** | | | | | | | 48,705 | | | |
| **Sign Replacement-Common** | | | | | | | | 26,181 | | |
| **Sign Replacement-Units** | | | | | | | | 6,736 | | |
| **Sofa/Sleeper (LR)-Deluxe** | | | | 30,544 | | | | | | |
| **Sofa/Sleeper (LR)-Executive** | | | | 13,090 | | | | | | |
| **Sofa/Sleeper (LR)-Standard** | | | | 47,997 | | | | | | |
| **Sofa/Sleeper (LR)-Superior** | | | | 47,997 | | | | | | |
| **Sound System-Fitness Center** | | | | 6,513 | | | | | | |
| **Telephone/PBX-Upgrade** | | | | | | 202,015 | | | | |
| **Television (Bedroom)-Deluxe** | | | | 6,574 | | | | | | |
| **Television (Bedroom)-Deluxe Partial** | | | | 2,630 | | | | | | |
| **Television (Bedroom)-Executive** | | | | 3,944 | | | | | | |
| **Television (Bedroom)-Standard** | | | | 5,259 | | | | | | |
| **Television (Bedroom)-Standard Partial** | | | | 9,203 | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Television (Bedroom)-Superior** | | | | 14,462 | | | | | | |
| **Television (Living Room)-Deluxe** | | | | 12,232 | | | | | | |
| **Television (Living Room)-Executive** | | | | 5,242 | | | | | | |
| **Television (Living Room)-Standard** | | | | 19,222 | | | | | | |
| **Television (Living Room)-Superior** | | | | 19,222 | | | | | | |
| **Valve Replace Allowance-Dom./Fire Sprinkler** | | 11,629 | | | | | | | | |
| **Vehicle-Truck-Ford Ranger** | 45,632 | | | | | | | | | |
| **Wifi Upgrade** | | | | | 195,709 | | | | | |
| **Window Treatments-Deluxe** | | | | 29,986 | | | | | | |
| **Window Treatments-Executive** | | | | 16,582 | | | | | | |
| **Window Treatments-Standard** | | | | 60,801 | | | | | | |
| **Window Treatments-Superior** | | | | 60,801 | | | | | | |
| **Wood Decking (Trex)** | | | | | | | | 63,549 | | |
| **Wood Railing Replace/Repair-Res. Units** | | | | 33,114 | | | | | | |
| **Totals** | **233,953** | **29,770** | **327,046** | **1,514,905** | **237,965** | **218,310** | **502,744** | **187,235** | **383,595** | **99,315** |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

### Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Appliances-Microwave-Deluxe** | | 16,115 | | | | | | | | |
| **Appliances-Microwave-Executive** | | 6,907 | | | | | | | | |
| **Appliances-Microwave-Standard** | | 25,324 | | | | | | | | |
| **Appliances-Microwave-Superior** | | 25,324 | | | | | | | | |
| **Appliances-Refrigerator-Deluxe** | | 12,989 | | | | | | | | |
| **Appliances-Refrigerators-Executive** | | 4,997 | | | | | | | | |
| **Appliances-Refrigerators-Standard** | | 18,323 | | | | | | | | |
| **Appliances-Refrigerators-Superior** | | 18,323 | | | | | | | | |
| **Asphalt-Parking-Slurry Seal** | 16,364 | | | | | 18,972 | | | | |
| **Attic Stock-Units** | | 15,795 | | | | | | | | 20,012 |
| **Awning Replace (Handicap Entrance)** | | | | | 12,951 | | | | | |
| **Baseboards-Replace-Deluxe** | | | | | | | | | | 15,681 |
| **Baseboards-Replace-Executive** | | | | | | | | | | 6,721 |
| **Baseboards-Replace-Standard** | | | | | | | | | | 24,642 |
| **Baseboards-Replace-Superior** | | | | | | | | | | 24,642 |
| **Bathroom Accessories-Deluxe** | | | | | | | | | | 7,004 |
| **Bathroom Accessories-Executive** | | | | | | | | | | 3,002 |
| **Bathroom Accessories-Standard** | | | | | | | | | | 11,007 |
| **Bathroom Accessories-Superior** | | | | | | | | | | 11,007 |
| **Bathroom Renovations-Fitness Center** | | | | | | | 108,207 | | | |
| **Bathtub-Deluxe** | | 27,837 | | | | | | | | |
| **Bathtub-Executive** | | 11,930 | | | | | | | | |
| **Bathtub-Standard** | | 43,744 | | | | | | | | |
| **Bathtub-Superior** | | 43,744 | | | | | | | | |
| **Bed Frame/Pedestal (Queen)-Deluxe** | | 1,718 | | | | | | | | 2,176 |
| **Bed Frame/Pedestal (Queen)-Executive** | | 736 | | | | | | | | 933 |
| **Bed Frame/Pedestal (Queen)-Standard** | | 2,699 | | | | | | | | 3,420 |
| **Bed Frame/Pedestal (Queen)-Superior** | | 2,699 | | | | | | | | 3,420 |
| **Bed Top Package-Deluxe** | | 6,213 | | | | | | | | 7,871 |
| **Bed Top Package-Executive** | | 2,663 | | | | | | | | 3,373 |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Bed Top Package-Standard** | | 9,763 | | | | | | | | 12,369 |
| **Bed Top Package-Superior** | | 9,763 | | | | | | | | 12,369 |
| **Boiler-Domestic Water** | | | | | 86,306 | | | | | |
| **Cabinet/Credenza-Front Desk** | | | | | | | | | | 13,436 |
| **Cabinets (Bath)-Deluxe** | | 21,007 | | | | | | | | |
| **Cabinets (Bath)-Executive** | | 4,502 | | | | | | | | |
| **Cabinets (Bath)-Standard** | | 16,506 | | | | | | | | |
| **Cabinets (Bath)-Superior** | | 33,012 | | | | | | | | |
| **Cabinets (Kitchen)-Deluxe** | | | | | | | | | | 52,531 |
| **Cabinets (Kitchen)-Executive** | | | | | | | | | | 22,513 |
| **Cabinets (Kitchen)-Standard** | | | | | | | | | | 66,040 |
| **Cabinets (Kitchen)-Superior** | | | | | | | | | | 88,053 |
| **Chair-Armchair (LR)-Deluxe** | | 14,391 | | | | | | | | 18,234 |
| **Chair-Armchair (LR)-Executive** | | 4,112 | | | | | | | | 5,210 |
| **Chair-Armchair (LR)-Standard** | | 18,503 | | | | | | | | 23,443 |
| **Chair-Armchair (LR)-Superior** | | 22,615 | | | | | | | | 28,653 |
| **Chair-Armchair (MBR)-Deluxe** | | 4,735 | | | | | | | | 5,999 |
| **Chair-Armchair (MBR)-Executive** | | 4,735 | | | | | | | | 5,999 |
| **Chair-Armchair (MBR)-Standard** | | 17,360 | | | | | | | | 21,995 |
| **Chair-Armchair (MBR)-Superior** | | 6,313 | | | | | | | | 7,998 |
| **Chair-Dining-Deluxe** | | | | | | | | | | 12,866 |
| **Chair-Dining-Executive** | | | | | | | | | | 5,514 |
| **Chair-Dining-Standard** | | | | | | | | | | 20,217 |
| **Chair-Dining-Superior** | | | | | | | | | | 20,217 |
| **Counters (Granite)-Bath Vanity-Deluxe** | | 12,577 | | | | | | | | |
| **Counters (Granite)-Bath Vanity-Executive** | | 2,695 | | | | | | | | |
| **Counters (Granite)-Bath Vanity-Standard** | | 9,882 | | | | | | | | |
| **Counters (Granite)-Bath Vanity-Superior** | | 19,764 | | | | | | | | |
| **Counters (Granite)-Kitchen-Deluxe** | | | | | | | | | | 23,639 |
| **Counters (Granite)-Kitchen-Executive** | | | | | | | | | | 10,131 |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Counters (Granite)-Kitchen-Standard** | | | | | | | | | | 29,718 |
| **Counters (Granite)-Kitchen-Superior** | | | | | | | | | | 37,147 |
| **Doors-Common Area Replace-Allowance** | | | 22,222 | | | | | 25,763 | | |
| **Doors-Guest Facing Replace-Allowance** | | | 36,424 | | | | | 42,228 | | |
| **Dresser (Mini)-Executive** | | 6,378 | | | | | | | | |
| **Dresser (Mini)-Standard** | | 11,693 | | | | | | | | |
| **Dresser (Mini)-Superior** | | 11,693 | | | | | | | | |
| **Dresser-Deluxe** | | 10,242 | | | | | | | | |
| **Dresser-Executive** | | 8,779 | | | | | | | | |
| **Dresser-Standard** | | 16,095 | | | | | | | | |
| **Dresser-Superior** | | 16,095 | | | | | | | | |
| **Elevator ADA Lift** | | | | | | | 47,154 | | | |
| **Entertainment Credenza-Deluxe** | | 11,117 | | | | | | | | |
| **Entertainment Credenza-Executive** | | 4,765 | | | | | | | | |
| **Entertainment Credenza-Standard** | | 17,470 | | | | | | | | |
| **Entertainment Credenza-Superior** | | 17,470 | | | | | | | | |
| **Fencing-Metal-Pool** | | | | | | 37,782 | | | | |
| **Fencing-Wood-2000** | 18,066 | | | | | | | | | |
| **Fencing-Wood-2013** | | | | | | | | | 24,033 | |
| **Fire Alarm System Modernize** | | 169,674 | | | | | | | | |
| **Fire Pump-30 HP** | | | | | | 70,381 | | | | |
| **Fixtures-Faucet (Bath)-Deluxe** | | | | | | | | | | 4,927 |
| **Fixtures-Faucet (Bath)-Executive** | | | | | | | | | | 2,112 |
| **Fixtures-Faucet (Bath)-Standard** | | | | | | | | | | 7,743 |
| **Fixtures-Faucet (Bath)-Superior** | | | | | | | | | | 7,743 |
| **Fixtures-Faucet (Kitchenette)-Dlx.** | | 3,889 | | | | | | | | |
| **Fixtures-Faucet (Kitchenette)-Exec.** | | 1,667 | | | | | | | | |
| **Fixtures-Faucet (Kitchenette)-Std.** | | 6,111 | | | | | | | | |
| **Fixtures-Faucet (Kitchenette)-Sup.** | | 6,111 | | | | | | | | |
| **Fixtures-Faucet (Tub/Shower)-Deluxe** | | 6,153 | | | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

### Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Fixtures-Faucet (Tub/Shower)-Executive** | | 2,637 | | | | | | | | |
| **Fixtures-Faucet (Tub/Shower)-Standard** | | 9,670 | | | | | | | | |
| **Fixtures-Faucet (Tub/Shower)-Superior** | | 9,670 | | | | | | | | |
| **Fixtures-Sink (Bath)-Deluxe** | | 4,667 | | | | | | | | |
| **Fixtures-Sink (Bath)-Executive** | | 2,000 | | | | | | | | |
| **Fixtures-Sink (Bath)-Standard** | | 7,333 | | | | | | | | |
| **Fixtures-Sink (Bath)-Superior** | | 7,333 | | | | | | | | |
| **Fixtures-Sink (Kitchenette)-Dlx.** | | | | | | | | | | 5,912 |
| **Fixtures-Sink (Kitchenette)-Exec.** | | | | | | | | | | 2,534 |
| **Fixtures-Sink (Kitchenette)-Std.** | | | | | | | | | | 9,291 |
| **Fixtures-Sink (Kitchenette)-Sup.** | | | | | | | | | | 9,291 |
| **Flooring- Carpet (Units)- Deluxe** | | 30,958 | | | | | | | | 39,224 |
| **Flooring-Carpet (Units)-Executive** | | 18,196 | | | | | | | | 23,054 |
| **Flooring-Carpet (Units)-Standard** | | 59,769 | | | | | | | | 75,725 |
| **Flooring-Carpet (Units)-Superior** | | 69,498 | | | | | | | | 88,053 |
| **Flooring-Carpet-Common Room** | | | | | | 23,184 | | | | |
| **Flooring-Carpet-Guest Corridors** | | 61,790 | | | | | | | | 78,287 |
| **Flooring-Carpet-Office** | | 4,245 | | | | | | | | |
| **Flooring-Carpet-Stairwells** | | 24,489 | | | | | | | | 31,027 |
| **Flooring-Rubber-Fitness Center** | | | | | 15,101 | | | | | |
| **Flooring-Tile (Units)-Deluxe** | | | | | | | | | | 13,238 |
| **Flooring-Tile (Units)-Executive** | | | | | | | | | | 6,079 |
| **Flooring-Tile (Units)-Standard** | | | | | | | | | | 17,088 |
| **Flooring-Tile (Units)-Superior** | | | | | | | | | | 13,373 |
| **Furnishings-Common Room Case Goods** | | 10,079 | | | | | | | | |
| **Furnishings-Common Room Soft Goods** | | 19,621 | | | | | | | | 24,859 |
| **Furnishings-Lobby Case Goods** | | 16,970 | | | | | | | | |
| **Furnishings-Lobby Soft Goods** | | 13,256 | | | | | | | | 16,795 |
| **Headboard/Bedpost (Queen)-Deluxe** | | 8,316 | | | | | | | | |
| **Headboard/Bedpost (Queen)-Executive** | | 3,564 | | | | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Headboard/Bedpost (Queen)-Standard** | | 13,068 | | | | | | | | |
| **Headboard/Bedpost (Queen)-Superior** | | 13,068 | | | | | | | | |
| **HVAC-Package Wall Unit-Units** | 335,140 | | | | | | | | 424,614 | |
| **HVAC-Spilt System (3 Ton)-Fitness Center** | | | | | | | | | 15,967 | |
| **HVAC-Spilt System (4 Ton)-Lobby** | | | | | | | | | | 20,012 |
| **Ice Machine** | | | 15,289 | | | | | | | |
| **Lighting-Battery Back Up Lights** | | | | | | | | | | 22,673 |
| **Lighting-Ceiling Fixture-Deluxe** | | 2,626 | | | | | | | | |
| **Lighting-Ceiling Fixture-Entry-Deluxe** | | 2,626 | | | | | | | | |
| **Lighting-Ceiling Fixture-Entry-Executive** | | 1,126 | | | | | | | | |
| **Lighting-Ceiling Fixture-Entry-Standard** | | 4,127 | | | | | | | | |
| **Lighting-Ceiling Fixture-Entry-Superior** | | 4,127 | | | | | | | | |
| **Lighting-Ceiling Fixture-Executive** | | 1,126 | | | | | | | | |
| **Lighting-Ceiling Fixture-Standard** | | 4,127 | | | | | | | | |
| **Lighting-Lamp-End Table/Nightstand-Dlx.** | | 6,040 | | | | | | | | |
| **Lighting-Lamp-End Table/Nightstand-Exec.** | | 2,588 | | | | | | | | |
| **Lighting-Lamp-End Table/Nightstand-Std.** | | 9,491 | | | | | | | | |
| **Lighting-Lamp-End Table/Nightstand-Sup.** | | 9,491 | | | | | | | | |
| **Lighting-Lamp-Floor-Deluxe** | | 6,478 | | | | | | | | |
| **Lighting-Lamp-Floor-Executive** | | 2,776 | | | | | | | | |
| **Lighting-Lamp-Floor-Standard** | | 10,180 | | | | | | | | |
| **Lighting-Lamp-Floor-Superior** | | 10,180 | | | | | | | | |
| **Lighting-Pendant-Lobby** | | 925 | | | | | | | | |
| **Lighting-Rec. Downlights-Lobby/Corridors** | | | | | | | | | | 26,144 |
| **Lighting-Sconce (Bath)-Deluxe** | | | | | | | | | | 3,549 |
| **Lighting-Sconce (Bath)-Executive** | | | | | | | | | | 1,521 |
| **Lighting-Sconce (Bath)-Standard** | | | | | | | | | | 5,577 |
| **Lighting-Sconce (Bath)-Superior** | | | | | | | | | | 5,577 |
| **Lighting-Site Post Lights** | | | | | | 58,838 | | | | |
| **Lighting-Wall Sconce-Lobby/Corridors** | | | | | | | | | | 2,028 |


Copyright Armstrong Consulting 2025 - All rights reserved.

## PROJECTED EXPENDITURES

### Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lockset Assemblies** | 101,494 | | | | | | | | | |
| **Love Seat (LR)-Executive** | | 6,353 | | | | | | | | 8,049 |
| **Love Seat (LR)-Supreme** | | 3,076 | | | | | | | | 3,898 |
| **Mattress/Boxspring (Queen)-Deluxe** | | 9,943 | | | | | | | | 12,597 |
| **Mattress/Boxspring (Queen)-Executive** | | 4,261 | | | | | | | | 5,399 |
| **Mattress/Boxspring (Queen)-Standard** | | 15,624 | | | | | | | | 19,796 |
| **Mattress/Boxspring (Queen)-Superior** | | 15,624 | | | | | | | | 19,796 |
| **Mirror-Bath Vanity-Deluxe** | | | | | | | | | | 3,549 |
| **Mirror-Bath Vanity-Executive** | | | | | | | | | | 1,521 |
| **Mirror-Bath Vanity-Standard** | | | | | | | | | | 5,577 |
| **Mirror-Bath Vanity-Superior** | | | | | | | | | | 5,577 |
| **Nightstands-Deluxe** | | 11,205 | | | | | | | | |
| **Nightstands-Executive** | | 4,802 | | | | | | | | |
| **Nightstands-Standard** | | 17,608 | | | | | | | | |
| **Nightstands-Superior** | | 17,608 | | | | | | | | |
| **Paint Interior-Ceilings-Deluxe** | | | | | | | | | | 17,651 |
| **Paint Interior-Ceilings-Executive** | | | | | | | | | | 10,229 |
| **Paint Interior-Ceilings-Standard** | | | | | | | | | | 33,515 |
| **Paint Interior-Ceilings-Superior** | | | | | | | | | | 38,523 |
| **Paint Interior-Common Room** | | 5,885 | | | | | | | | 7,456 |
| **Paint Interior-Fitness Center** | | | | 8,055 | | | | | | |
| **Paint Interior-Guest Corridors** | | 61,820 | | | | | | | | 78,325 |
| **Paint Interior-Main Lobby** | | 11,137 | | | | | | | | 14,110 |
| **Paint Interior-Stairwells** | | | | | | | | | | 31,266 |
| **Paint Interior-Walls/Trim-Deluxe** | | 48,815 | | | | | | | | 61,847 |
| **Paint Interior-Walls/Trim-Executive** | | 25,019 | | | | | | | | 31,699 |
| **Paint Interior-Walls/Trim-Standard** | | 80,054 | | | | | | | | 101,426 |
| **Paint Interior-Walls/Trim-Superior** | | 88,958 | | | | | | | | 112,708 |
| **Paint/Waterproof Seal-Building Exterior** | | | | 307,257 | | | | | | |
| **Pool ADA Lift** | | | | | 21,730 | | | | | |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

## Bay Voyage Inn - Analysis 1 - 2025

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Pool Coping Replace/Repair** | | | | | | | 19,227 | | | |
| **Pool Deck Furniture** | | | | | 26,950 | | | | | |
| **Pool Deck Recoat/Repairs** | | | | | | | 32,063 | | | |
| **Pool Filter/Pump** | | | | | 23,187 | | | | | |
| **Pool Resurface** | | | | | | | 81,997 | | | |
| **Pool Tile Replace/Refurbish** | | | | | | | 11,062 | | | |
| **Roof-Asphalt Shingle-Roof Deck** | | 34,749 | | | | | | | | |
| **Roof-Membrane EPDM** | | | | | | | | | | 277,666 |
| **Roof-Storage Building** | | 3,554 | | | | | | | | |
| **Siding Replace/Refurbish-Fiber Cement** | | | | | | | 1,048,854 | | | |
| **Sofa/Sleeper (LR)-Deluxe** | | 38,698 | | | | | | | | 49,029 |
| **Sofa/Sleeper (LR)-Executive** | | 16,585 | | | | | | | | 21,013 |
| **Sofa/Sleeper (LR)-Standard** | | 60,811 | | | | | | | | 77,046 |
| **Sofa/Sleeper (LR)-Superior** | | 60,811 | | | | | | | | 77,046 |
| **Sound System-Fitness Center** | | | | 8,754 | | | | | | |
| **Table-Cocktail-Deluxe** | | 7,003 | | | | | | | | |
| **Table-Cocktail-Executive** | | 3,001 | | | | | | | | |
| **Table-Cocktail-Standard** | | 11,005 | | | | | | | | |
| **Table-Cocktail-Superior** | | 11,005 | | | | | | | | |
| **Table-End Table-Deluxe** | | 6,128 | | | | | | | | |
| **Table-End Table-Executive** | | 5,252 | | | | | | | | |
| **Table-End Table-Standard** | | 9,629 | | | | | | | | |
| **Table-End Table-Superior** | | 9,629 | | | | | | | | |
| **Telephone/PBX-Upgrade** | | | | | | | | 288,095 | | |
| **Television (Bedroom)-Deluxe** | | 8,329 | | | | | | | | 10,552 |
| **Television (Bedroom)-Deluxe Partial** | | 3,332 | | | | | | | | 4,221 |
| **Television (Bedroom)-Executive** | | 4,997 | | | | | | | | 6,331 |
| **Television (Bedroom)-Standard** | | 6,663 | | | | | | | | 8,442 |
| **Television (Bedroom)-Standard Partial** | | 11,660 | | | | | | | | 14,773 |
| **Television (Bedroom)-Superior** | | 18,323 | | | | | | | | 23,215 |


Copyright Armstrong Consulting 2025 - All rights reserved.

# PROJECTED EXPENDITURES

**Bay Voyage Inn - Analysis 1 - 2025**

| | 2045 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Television (Living Room)-Deluxe** | | 15,498 | | | | | | | | 19,636 |
| **Television (Living Room)-Executive** | | 6,642 | | | | | | | | 8,415 |
| **Television (Living Room)-Standard** | | 24,354 | | | | | | | | 30,856 |
| **Television (Living Room)-Superior** | | 24,354 | | | | | | | | 30,856 |
| **Tile Shower Surround-Deluxe** | | 22,390 | | | | | | | | |
| **Tile Shower Surround-Executive** | | 9,596 | | | | | | | | |
| **Tile Shower Surround-Standard** | | 35,184 | | | | | | | | |
| **Tile Shower Surround-Superior** | | 35,184 | | | | | | | | |
| **Tile-Kitchen Backsplash-Deluxe** | | | | | | | | | | 4,728 |
| **Tile-Kitchen Backsplash-Executive** | | | | | | | | | | 2,026 |
| **Tile-Kitchen Backsplash-Standard** | | | | | | | | | | 7,429 |
| **Tile-Kitchen Backsplash-Superior** | | | | | | | | | | 7,429 |
| **Toilets-Deluxe** | | 9,979 | | | | | | | | |
| **Toilets-Executive** | | 4,277 | | | | | | | | |
| **Toilets-Standard** | | 15,682 | | | | | | | | |
| **Toilets-Superior** | | 15,682 | | | | | | | | |
| **Trash Enclosure** | 9,584 | | | | | | | | | |
| **Valve Replace Allowance-Dom./Fire Sprinkler** | | 15,632 | | | | | | | | |
| **Vehicle-Truck-Ford Ranger** | 61,340 | | | | | | | | | |
| **Wifi Upgrade** | | 240,736 | | | | | | | 296,123 | |
| **Window Treatments-Deluxe** | | 37,991 | | | | | | | | 48,134 |
| **Window Treatments-Executive** | | 21,009 | | | | | | | | 26,618 |
| **Window Treatments-Standard** | | 77,034 | | | | | | | | 97,600 |
| **Window Treatments-Superior** | | 77,034 | | | | | | | | 97,600 |
| **Wood Railing Replace/Repair-Res. Units** | | | | | | | | | 51,608 | |
| **Totals** | **541,988** | **2,781,162** | **73,935** | **324,066** | **186,225** | **209,157** | **1,348,564** | **356,086** | **812,345** | **2,827,813** |


Copyright Armstrong Consulting 2025 - All rights reserved.

# EXHIBIT B

to

DECLARATION OF BRENNAN HANDFIELD IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND APPLICATIONS FOR FIRST DAY RELIEF

**DRAFT**
**INTERVAL OWNERS' ASSOCIATION: THE BAY VOYAGE, INC.**
**SPECIAL MEETING OF THE MEMBERSHIP**
**OCTOBER 13, 2025 at 9:00 AM ET**
**BAY VOYAGE OWNERS LOUNGE**

## MEETING MINUTES

The Interval Owners' Association: The Bay Voyage, Inc. Special Meeting of the Membership was held Monday, October 13, 2025, at 9:00 AM, Eastern Time**.** Present at this meeting were:

**Board Members**
Brennan Handfield, President
Diane Chapman, Vice President
Jennifer Aviles, Secretary/Treasurer
Ruth Graff, Director
Donna Mcardle, Director

**Management Company**
Bryan Dixon, VP Resort Operations
John Lewis, Director, Resort Operations
Richard Scinta, VP, Club & Association Governance
Amy Bornmann, Director, Club & Association Governance
Lori Persing, Association Governance Specialist
Rita Harfouch, General Manager
Ayla Merola, Assistant General Manager
Erica Stevens, Sr. Specialist, Club Education
Robert Peck, Manager, Owner Satisfaction Club
Lauren Flynn, Recording Secretary

**Others**
Dan Eliades, Attorney with K&L Gates
Jennifer Mazawey, Attorney with K&L Gates
Jeff Azuse, Executive VP of Hilco Real Estate
Adam Zimmerman, Senior Vice President of Hilco Real Estate

**Owners**
See attached Exhibit A

**Certification of Quorum/Call to Order**
With 1664 voting interests available and 1363, or 81.911% of the voting interests represented in person or by Proxy, Brennan Handfield certified quorum of at least 25% and called the meeting to order at 9:00 AM. Rita Harfouch certified notice of the meeting had been provided on September 23, 2025 in accordance with the Association Bylaws.

**New Business**
**K&L Gates Presentation**
Dan Eliades with K&L Gates LLP presented on the proposed bankruptcy of the association and the sale of the resort.

**HilCo Real Estate Presentation**
Jeff Azuse with HilCo Real Estate provided an overview of his firm and its proposed representation of the Association in the sale of the resort.

**Club and Owner Services**
Erica Stevens with Wyndham Club Management gave a presentation regarding Club Wyndham Access.

**Question and Answer Session**
The floor was opened at this time for questions and comments from the meeting attendees.

**Preliminary Voting Results**
Rita Harfouch reviewed the voting procedures and shared the preliminary voting results from the proxy-ballots and online votes received prior to the meeting:

**Chapter 11 Filing for the Association**
Authorizing and empowering the Board of Directors of the Association, and any officer of the Association (each such persons, an "Authorized Person" and together, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, on behalf of, and in the name of, the Association to execute and verify or certify a petition under chapter 11 of the United States Bankruptcy Code and to cause the same to be filed in an applicable United States Bankruptcy Court (the "Bankruptcy Court") at such time as any such Authorized Person executing the same shall determine and, in such form, or forms as any such Authorized Person may approve, and in each case in such Authorized Person's sole discretion after consultation with the Association's counsel;

Authorizing and empowering each Authorized Person to appear in such bankruptcy proceeding of the Association (the "Bankruptcy Matter") on behalf of the Association or to direct another representative to appear, and to otherwise do and perform all acts and deeds and to execute and deliver all necessary documents on behalf of the Association with such Bankruptcy Matter and to take all actions (including, without limitation, to negotiate and execute any documents, certificates, supplemental agreements, and instruments) to act as signatory on behalf of the Association in respect of the Bankruptcy Matter and/or any persons to whom such Authorized Persons delegate certain responsibilities, be, and hereby are, authorized to execute and file on behalf of the Association all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief; and

Without limiting any of the foregoing, authorizing and empowering (but not requiring) each Authorized Person on behalf of the Association to file all pleadings, motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain all, any or none of the following relief in the Bankruptcy Matter:
(i) member consent or Bankruptcy Court order authorizing the sale of the Association's interest in the Property, jointly with the sale of the interests of all members;
(ii) Bankruptcy Court approval of marketing, bid and sale procedures for the Property;
(iii) Bankruptcy Court authorization to sell the Property free and clear of the interests of all members, with such interests to attach to the proceeds of sale, subject to distribution by Bankruptcy Court order;
(iv) Bankruptcy Court authorization to terminate or amend the declaration and timeshare plan effective at or prior to closing of the sale of the Property;
(v) Bankruptcy Court authorization to assume and assign to a purchaser or reject and terminate all executory contracts and unexpired leases to which the Association is a party;
(vi) Bankruptcy Court order determining the nature, extent and validity of all claims against the Association and the treatment thereof;
(vii) Bankruptcy Court authorization to distribute net sale proceeds (after costs of administration and sale) as well as all remaining property of the Association pursuant to the Bankruptcy Code and Bankruptcy Court;
(viii) Bankruptcy Court authorization to dissolve the Association following sale of the Property; and
(ix) such other relief as the Authorized Persons deem necessary.
**With 1332, or 99.626% of the votes cast, voting Yes/For and 5, or 0.374% of the votes cast, voting No/Against, the measure passed.**

**Retention of Professionals**
Authorizing and empowering each of the Authorized Persons to employ on behalf of the Association:
(i) the law firm of K&L Gates LLP as bankruptcy counsel;
(ii) Hilco Real Estate, LLC as real estate broker; and
(iii) any other legal counsel, accountants, financial advisors, restructuring advisors, brokers, noticing agents or other professionals the Authorized Persons deem necessary, appropriate or advisable (including "conflicts counsel" to represent the Association in any Bankruptcy Matter where there exists a dispute between the

Association and Club Wyndham Access Vacation Ownership Plan, Worldmark by Wyndham, Wyndham Vacation Resorts, Inc. and/or Wyndham Vacation Management, Inc.); each to represent and assist the Association in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, authorizing and empowering the Authorized Persons in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services;

Authorizing and empowering the Authorized Persons to, on behalf of the Association, continue to employ Wyndham Vacation Management, Inc. to provide management and other services to the Association pursuant to the terms of the existing agreements between the Association and Wyndham Vacation Management, Inc., and to assist the Association in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and in the Bankruptcy Matter; and in connection therewith, authorizing and empowering the Authorized Persons in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

Authorizing and empowering Wyndham Vacation Management, Inc. to communicate and exchange information and documents with the Authorized Persons and all any other legal counsel, accountants, financial advisors, restructuring advisors, brokers, noticing agents or other professionals engaged by the Association regarding the Association, the Property, the Bankruptcy Matter and/or to assist the Association in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and in the Bankruptcy.
**With 1348, or 99.7041% of the votes cast, voting Yes/For and 4, or 0.2959% of the votes cast, voting No/Against, the measure passed.**

**2026 Operations**

Authorizing and empowering each Authorized Person, acting alone or with one or more other Authorized Persons, on behalf of, and in the name of, the Association to:
(i) suspend occupancy at the resort by members, guests and others as of December 27, 2025 (or shortly thereafter as deemed necessary or proper by the Authorized Persons) without waiver of the right of the Association to re-commence occupancy upon notice to members;
(ii) suspend collection of 2026 maintenance fees, without waiver of the right of the Association to later seek payment of such fees and without waiver of member obligations regarding same, upon notice to members;
(iii) waive the funding of reserves in the 2026 budget pursuant to applicable provisions of Association governing documents and applicable law;
(iv) refund to members 2026 maintenance fees received by the Association, if any, without waiver of the right of the Association to later seek payment of such fees, upon notice to members, and without waiver of member obligations regarding same;
(v) immediately suspend reservations (including cancelling any existing reservations with occupancy dates after December 27, 2025) at the resort after December 27, 2025, without waiver of the right of the Association to later accept reservations at the resort upon notice to members;
(vi) transfer the balance of the reserve funds of the Association as of 12/31/2025, as needed, to pay operating expenses and costs of the Association as set forth in the attached limited operations budget for 2026 or any approved budget for the Association, pursuant to applicable provisions of the governing documents and applicable law; and/or
(vii) take any and all action that they deem necessary or proper regarding the operation and/or management of the Association.
**With 1347, or 99.7039% of the votes cast, voting Yes/For and 4, or 0.2961% of the votes cast, voting No/Against, the measure passed.**

**Conveyance of Interests to the Association**

Authorizing and empowering each Authorized Person, on behalf of the Association, directly or by their designee(s) or delegate(s), to negotiate and execute any documents, certificates, agreements and

instruments), to act as signatory on behalf of the Association, and to otherwise do and perform all acts all necessary in connection with the acquisition or acceptance by the Association of one or more units, intervals and/or interests at the resort, as tenant in common, prior to a bankruptcy filing by the Association, and to take any and all action that they deem necessary or proper to obtain such unit(s), interval(s) and/or interest(s).
**With 1344, or 99.4819% of the votes cast, voting Yes/For and 7, or 0.5181% of the votes cast, voting No/Against, the measure passed.**

**Further Actions and Prior Actions**

Authorizing and empowering the Association to take each of the actions described in these proposed resolutions or any of the actions authorized in these proposed resolutions;

That in addition to the specific authorizations above, the Authorized Persons, either individually or as otherwise required by the Association governing documents and applicable law, be authorized and empowered to execute, acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Association relating to the Bankruptcy Matter;

Authorizing and empowering each of the Authorized Persons (and their designees and delegates), in the name of and on behalf of the Association, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of these proposed resolutions;

That all acts, actions, and transactions relating to the matters contemplated by these proposed resolutions done in the name of and on behalf of the Association, which acts would have been approved by these proposed resolutions except that such acts were taken before the adoption of these proposed resolutions, in all respects be approved, confirmed and ratified as the true acts and deeds of the Association with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Association; and

That any Authorized Person be authorized to do all such other acts, deeds and other things as each Association itself may lawfully do, in accordance with its governing documents and applicable law, howsoever.
**With 1344, or 99.6294% of the votes cast, voting Yes/For and 5, or 0.3706% of the votes cast, voting No/Against, the measure passed.**

**Adjournment**

**There being no further business to come before the meeting, Donna Mcardle made a motion to adjourn. The motion carried and the meeting adjourned at 10:24 AM.**

*Respectfully submitted by ________________________, Recording Secretary.*

*Approved by the Owners on: ________________________*

Exhibit "A"

**Attending virtually and registered to attend in person**

| | |
|---|---|
| Jan | Beebe |
| Anne | Bossolt |
| James | Castellani |
| Marilyn | Cohen |
| Guy | Crepeau |
| Denise | Dammling |
| Fred | DeCaro III |
| Debbie | Dobbins |
| Kathy | Faye |
| Stephen and Dawn | Horecky |
| Mike | Hutchinson |
| Baila | Janock |
| William | Jolivet |
| Walter | Budz |
| Kevin | McCoy |
| Margaret | Mehai |
| Karen | Munroe |
| Kenneth | Phillips |
| Suzanne | Pinette |
| Kim | Raymond |
| Peter | Smith |
| Joyce | Sturman |
| Jean | Tenan |
| JEAN | TONDREAULT |
| Debra | Vitale |
| cathy | |
| Mike | (UMC Martha's Vineyard) |

# **EXHIBIT C**

to

DECLARATION OF BRENNAN HANDFIELD IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND APPLICATIONS FOR FIRST DAY RELIEF

**DRAFT**
**INTERVAL OWNERS' ASSOCIATION: THE BAY VOYAGE, INC.**
**SPECIAL MEETING OF THE MEMBERSHIP**
**FEBRUARY 24, 2024 at 10:00 AM EASTERN**

## MEETING MINUTES

The Interval Owners' Association: The Bay Voyage, Inc. Special Meeting of the Membership was held Tuesday, February 24, 2026, at 10:00 AM, Eastern Time**.** Present at this meeting were:

**Board Members**
Brennan Handfield, President
Diane Chapman, Vice President
Jennifer Aviles, Secretary/Treasurer

**Management Company**
Bryan Dixon, VP Resort Operations
John Lewis, Director, Resort Operations
Erica Stevens, Sr. Specialist, Club Education
Amy Bornmann, Director, Club & Association Governance
Lori Martin, Association Governance Specialist
Lauren Flynn, Recording Secretary

**Others**
Dan Eliades, Attorney with K&L Gates
William Waldman, Attorney with K&L Gates

**Owners**
Sandy and Mike Joyce
Rochelle Jonswald
Anne Bossolt
Nicole Periquito
(***) ***-9333

**Certification of Quorum/Call to Order**
With 77.9% of the voting interests represented in person or by Proxy, Brennan Handfield certified quorum of at least 25% and called the meeting to order at 10:04 AM. He certified notice of the meeting had been provided on February 10, 2026 in accordance with the Association Bylaws.

**New Business**
**K&L Gates Presentation**
Dan Eliades with K&L Gates LLP presented on the proposed bankruptcy of the association and the sale of the resort.

**Question and Answer Session**
The floor was opened at this time for questions and comments from the meeting attendees.

**Preliminary Voting Results**
Brennan Handfield reviewed the voting procedures and shared the preliminary voting results from the proxy-ballots and online votes received prior to the meeting:

**Chapter 11 Filing for the Association**
Authorizing and empowering the Board of Directors of the Association, and any officer of the Association (each such persons, an "Authorized Person" and together, the "Authorized Persons"), acting alone or with one or more other Authorized Persons, on behalf of, and in the name of, the Association to execute and verify or certify a petition under chapter 11 of the United States Bankruptcy Code and to cause the same to be filed in an applicable United States Bankruptcy Court (the "Bankruptcy Court") at such time as any such Authorized Person executing the same shall determine and, in such form, or forms as any such Authorized Person may approve, and in each case in such Authorized Person's sole discretion after consultation with the Association's counsel;

Authorizing and empowering each Authorized Person to appear in such bankruptcy proceeding of the Association (the "Bankruptcy Matter") on behalf of the Association or to direct another representative to appear, and to otherwise do and perform all acts and deeds and to execute and deliver all necessary documents on behalf of the Association with such Bankruptcy Matter and to take all actions (including, without limitation, to negotiate and execute any documents, certificates, supplemental agreements, and instruments) to act as signatory on behalf of the Association in respect of the Bankruptcy Matter and/or any persons to whom such Authorized Persons delegate certain responsibilities, be, and hereby are, authorized to execute and file on behalf of the Association all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief; and

Without limiting any of the foregoing, authorizing and empowering (but not requiring) each Authorized Person on behalf of the Association to file all pleadings, motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain all, any or none of the following relief in the Bankruptcy Matter:

(i) member consent or Bankruptcy Court order authorizing the sale of the Association's interest in the Property, jointly with the sale of the interests of all members;

(ii) Bankruptcy Court approval of marketing, bid and sale procedures for the Property;

(iii) Bankruptcy Court authorization to sell the Property free and clear of the interests of all members, with such interests to attach to the proceeds of sale, subject to distribution by Bankruptcy Court order;

(iv) Bankruptcy Court authorization to terminate or amend the declaration and timeshare plan effective at or prior to closing of the sale of the Property;

(v) Bankruptcy Court authorization to assume and assign to a purchaser or reject and terminate all executory contracts and unexpired leases to which the Association is a party;

(vi) Bankruptcy Court order determining the nature, extent and validity of all claims against the Association and the treatment thereof;

(vii) Bankruptcy Court authorization to distribute net sale proceeds (after costs of administration and sale) as well as all remaining property of the Association pursuant to the Bankruptcy Code and Bankruptcy Court;

(viii) Bankruptcy Court authorization to dissolve the Association following sale of the Property; and

(ix) such other relief as the Authorized Persons deem necessary.

**With 1295, or 99.85% of the votes cast, voting Yes/For and 2, or 0.15% of the votes cast, voting No/Against, the measure passed.**

**Retention of Professionals**

Authorizing and empowering each of the Authorized Persons to employ on behalf of the Association:

(i) the law firm of K&L Gates LLP as bankruptcy counsel;

(ii) Hilco Real Estate, LLC as real estate broker; and

(iii) any other legal counsel, accountants, financial advisors, restructuring advisors, brokers, noticing agents or other professionals the Authorized Persons deem necessary, appropriate or advisable (including "conflicts counsel" to represent the Association in any Bankruptcy Matter where there exists a dispute between the Association and Club Wyndham Access Vacation Ownership Plan, Worldmark by Wyndham, Wyndham Vacation Resorts, Inc. and/or Wyndham Vacation Management, Inc.); each to represent and assist the Association in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, authorizing and empowering the Authorized Persons in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services;

Authorizing and empowering the Authorized Persons to, on behalf of the Association, continue to employ Wyndham Vacation Management, Inc. to provide management and other services to the Association pursuant to the terms of the existing agreements between the Association and Wyndham Vacation Management, Inc., and to assist the Association in carrying out its duties and responsibilities and

exercising its rights under the Bankruptcy Code and in the Bankruptcy Matter; and in connection therewith, authorizing and empowering the Authorized Persons in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services; and

Authorizing and empowering Wyndham Vacation Management, Inc. to communicate and exchange information and documents with the Authorized Persons and all any other legal counsel, accountants, financial advisors, restructuring advisors, brokers, noticing agents or other professionals engaged by the Association regarding the Association, the Property, the Bankruptcy Matter and/or to assist the Association in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and in the Bankruptcy.

**With 1295, or 99.85% of the votes cast, voting Yes/For and 2, or 0.15% of the votes cast, voting No/Against, the measure passed.**

**Further Actions and Prior Actions**

Authorizing and empowering the Timeshare Association to take each of the actions described in these proposed resolutions or any of the actions authorized in these proposed resolutions;

That in addition to the specific authorizations above, the Authorized Persons, either individually or as otherwise required by the Timeshare Association governing documents and applicable law, be authorized and empowered to execute, acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Timeshare Association relating to the Bankruptcy Matter;

Authorizing and empowering each of the Authorized Persons (and their designees and delegates), in the name of and on behalf of the Timeshare Association, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of these proposed resolutions;

That all acts, actions, and transactions relating to the matters contemplated by these proposed resolutions done in the name of and on behalf of the Timeshare Association, which acts would have been approved by these proposed resolutions except that such acts were taken before the adoption of these proposed resolutions, in all respects be approved, confirmed and ratified as the true acts and deeds of the Timeshare Association with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Timeshare Association; and

That any Authorized Person be authorized to do all such other acts, deeds and other things as each Timeshare Association itself may lawfully do, in accordance with its governing documents and applicable law, howsoever.

**With 1295, or 99.85% of the votes cast, voting Yes/For and 2, or 0.15% of the votes cast, voting No/Against, the measure passed.**

**Re-Appointing Interval Association Board to represent member of Interval Association at meetings of the Condo Association**

The Board of Directors of the Interval Owners' Association: The Bay Voyage, Inc. is reappointed to represent the members of the Interval Owners at any meeting of the Bay Voyage Condominium Association pursuant to Article XVIII of the Bay Voyage Declaration of Covenants, Conditions, and Restrictions of Interval Ownership.

**With 1296, or 99.92% of the votes cast, voting Yes/For and 1, or 0.08% of the votes cast, voting No/Against, the measure passed.**

**Adjournment**

**There being no further business to come before the meeting, Sandy Joyce made a motion to adjourn. The motion carried and the meeting adjourned at 10:26 AM.**

*Respectfully submitted by ______________________, Recording Secretary.*

*Approved by the Owners on: ______________________*